# Exhibit 2

ZIMMERMAN | REED

September 6, 2023

***Via Certified Mail***
***with Return Receipt Requested***

L'Occitane Inc.
Attn: Legal Department
111 W 33rd Street, 20th Floor
New York, NY 10120

***Re:*** ***Pre-Filing Notice of Dispute / Confidential Settlement Communication***

To Whom It May Concern:

We write at this time to inform you of the potential legal claims that approximately 2,250 of our clients (collectively referred to as "Claimants") may present against you and to request the opportunity to discuss informal resolution prior to the formal filing of any claims.

## I.      Summary of the Claims

Claimants are consumers who during past year interacted on L'Occitane's ("Respondent") website while in the State of California.  The disputes at issue here center around Respondent's conduct using certain website communication tracking software supplied by and used in conjunction with certain third-parties.  This includes, but is not limited to, "session replay" software used to monitor and record our Claimants' interactions with Respondent's website without prior consent.  The tracking activity at issue includes the interception and recording of Claimants' mouse movements, clicks, keystrokes, scrolls, pageviews, date, time and duration of visits, and/or other personal information while the communications are in transit by Respondent or third parties it had agreements with.  Upon information and belief, the third-party entity(s) providing the software intercepted Claimants' private communications and then supplied it back to Respondent pursuant to agreement and used by it in a variety of ways to increase sales and revenue, including marketing.   No authorization or consent was provided by Claimants to any third-party entity for any tracking activity at issue.

Respondent's use of tracking software violates applicable laws, including but not limited to the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §631 *et seq.*, which was enacted to protect the right of privacy.  The California Penal Code is very clear in its prohibition against unauthorized taps or connections, including those involving internet communications, without the prior consent of the other person.  Section 631 creates four avenues for relief:

(1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument";

(2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";

(3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to

September 6, 2023
Page 2

communicate in any way, any information so obtained"; and

(4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

Cal. Penal Code § 631(a).   Additional violations of Cal. Penal Code §632.7(a) occur by the recording of any communication without the consent of all parties where one of the parties is using a cellular telephone.

The challenged conduct also violates the California Unfair Competition Law's prohibition on unlawful conduct (Bus & Prof. Code §17200 *et seq.*), the California Consumer Legal Remedy Act's prohibition against making representations or omissions regarding transactions that are prohibited by law, and/or other privacy laws.

Numerous articles have been written about the negative privacy implications of recording user interactions during a visit to a website, including:

(a) The Dark Side of 'Replay Sessions' That Record Your Every Move Online, located at https://www.wired.com/story/the-dark-side-of-replay-sessionsthat-record-your-every-move-online/;

(b) Session-Replay Scripts Disrupt Online Privacy in a Big Way, located at https://www.techrepublic.com/article/session-replay-scripts-are-disruptingonline-privacy-in-a-big-way/;

(c) Are Session Recording Tools a Risk to Internet Privacy? located at https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/ 3 https://techcrunch.com/2019/02/07/apple-glassbox-apps/

(d) Session Replay is a Major Threat to Privacy on the Web, located at https://www.itnews.com.au/news/session-replay-is-a-major-threat-toprivacy-on-the-web-477720;

(e) Popular Websites Record Every Keystroke You Make and Put Personal Information and Risk, located at https://medium.com/strongercontent/popular-websites-record-every-keystroke-you-make-and-putpersonal-information-at-risk-c5e95dfda514; and

(f) Website Owners can Monitor Your Every Scroll and Click, located at https://www.digitalinformationworld.com/2020/02/top-brands-and-websitescan-monitor-your-every-scroll-and-click.html

By way of its conduct, it appears that Respondent violated: 1) the second prong of §631(a) by tracking Claimants' online communications to learn their meaning while in transit, and/or 2) the fourth prong of §631(a) by employing or agreeing with third parties providing the tracking software to aid and assist in that process.  The violations at issue took place within the past year.

September 6, 2023
Page 3

Each violation of §631 gives rise to an independent claim for a minimum of $5,000 in statutory damages, and potentially more. The CIPA at § 637.2 provides for damages of: "the greater of" $5000 or "[t]hree times the amount of actual damages, if any, sustained by the plaintiff," and states that it is "not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(a), (c). Such relief is requested for each Claimant. The same conduct also gives rise to claims for relief under the UCL and CLRA, including claims seeking public injunctive relief on behalf of the general public of California.

Respondent's use of this tracking technology was not instrumental or necessary to its provision of any of its goods or services. Rather, the level and detail of information surreptitiously collected by Respondent was to gain an unlawful understanding of the habits and preferences of users to its website and then use that data for its own economic benefit and business purposes.

Claimants reasonably expected that visits to Respondent's website would be private, and that Respondent would not be intercepting or tapping their communications with the website, particularly because Respondent failed to present Claimants with a disclosure or affirmative consent form alerting them that the visits to the website were monitored and recorded. Respondent did not obtain consent from Claimants before engaging in the tracking. Further, no third parties obtained Claimants prior consent before engaging in the tracking activities that they conducted pursuant to their agreement with you. Claimants reasonably believed to their detriment that their interactions with your website were private and would not be recorded or monitored for later playback by you or third-parties, or worse yet, monitored live while they were on your website. Moreover, courts have held that privacy policies do not bind users, "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014). In sum, Respondent unlawfully tapped, made an unauthorized connection to, and intercepted Claimants' electronic communications through visits to the Respondent website (and/or agreed with third-parties to conduct such activities and share it), causing injuries, including violations of Claimants' substantive legal privacy rights under CIPA, the federal Wiretap Act (18 U.S.C. §2511) and/or other applicable law.

##   II.       Dispute Process

The Terms and Conditions published on your website (www.loccitane.com) provide for dispute resolution by arbitration before the American Arbitration Association (AAA) on an individual basis. We are prepared to proceed to file individual arbitrations on behalf of each Claimant before AAA, seeking all available relief. However, considering that AAA's Supplemental Rules for Multiple Case Filings require the parties to mediate claims within 120 days from the established due date for the Answer, we are hopeful that early discussions could be productive before the parties direct their resources to individual arbitrations. Should it be necessary to commence individual arbitrations, Claimants will request that Respondent reimburse all filling fees incurred by Claimants, pursuant to Respondent's Dispute Resolution and Arbitration Agreement.

September 6, 2023
Page 4

We request a response from you within 30 days of the date of this letter as to whether Respondent is willing to engage in early resolution discussions or if Claimants will need to advance their claims through AAA. We look forward to your response.


Sincerely,

Y. Christopher Nagakawa
Attorney | 310.765.1103 | christopher.nagakawa@zimmreed.com


cc.      Jason Johnson
         Hart Robinovitch