# Exhibit 3



**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006

202.857.6000 **MAIN**
202.857.6395 **FAX**

afslaw.com

**Adam D. Bowser**
Partner
202.857.6126 **DIRECT**
adam.bowser@afslaw.com

October 6, 2023

VIA E-MAIL AND CERTIFIED MAIL

Y. Christopher Nagakawa
Zimmerman Reed
6420 Wilshire Blvd, Ste 1080
Los Angeles, CA 90048
christopher.nagakawa@zimmreed.com

**Re: CIPA Demand Letter to L'Occitane**

Christopher:

ArentFox Schiff LLP represents L'Occitane Inc. ("L'Occitane"), and I am writing in response to your September 6, 2023 letter generically claiming L'Occitane is somehow in violation of CIPA Sections 631 and 632.7, based solely on unsubstantiated assertions that "approximately 2,250 of [y]our clients" "interacted on L'Occitane's website." The mass arbitration threatened in your form demand letter is meritless on both the facts and the law, for numerous reasons, as detailed below.

## A. L'Occitane's Website Provides Conspicuous Notice Of Its Cookie Policy and Privacy Practices Relevant Here

As your letter implicitly concedes, prior consent is a complete defense to any of your threatened claims. Letter at 3 ("Respondent failed to present Claimants with a disclosure or affirmative consent form"). What your form demand letter[1] fails to distinguish in its template

[1] Respectfully, your form demand letter is no different than the boilerplate pleadings Judge Bernal recently railed against in the largely indistinguishable case *Byars v. Hot Topic, Inc.*, No. EDCV221652JGBKKX, 2023 WL 2026994, at *5 (C.D. Cal. Feb. 14, 2023): "Initiating legitimate litigation generally requires a considerable expenditure of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead specific facts arising out of a specific encounter with a specific defendant. As the saying goes, time is also money. So when the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. … And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far." As Judge





allegations is that a California resident visiting L'Occitane's Website (the "Website") *is* provided a conspicuous Cookie Notice when the individual first visits the Website:




---

Bernal and many other judges have found since, the boilerplate CIPA claims filed by Scott Ferrell and Robert Tauler that you appear to be copying from are well beyond the bounds of reasonableness.





Indeed, your form demand letter states that the Website "provides no notice to users." This assertion makes us legitimately question whether you actually reviewed the Website.[2] How can you plausibly make this assertion in light of disclosure above? Suffice it to say, L'Occitane, as a European-based company, has had to navigate the GDPR's much more stringent disclosure, consent and use requirements and has designed its U.S. website and related privacy practices to meet or exceed any applicable obligations in the U.S., including in California. To be sure, L'Occitane complies with all California-specific requirements applicable to the Website. In fact, while you cite the Ninth Circuit's older *Nguyen* precedent, the Court of Appeals' more recent *Berman* decision reveals that L'Occitane easily meets all of the conditions for establishing an enforceable website-based agreement, even under browsewrap standards.[3] *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857–58 (9th Cir. 2022). That is, as can be seen above, L'Occitane clearly provides a conspicuous notice – via a pop-up that cannot be missed – that the Website utilizes cookies, the purposes of such cookies, and a clearly recognizable hyperlink to its Privacy Policy. In fact, the Privacy Policy hyperlink is both contrasted with a different color *and* underlined, *exactly* as the Ninth Circuit found would constitute "reasonably conspicuous notice" under a browsewrap evaluation. *Id.* at 857 ("hyperlinks **reasonably conspicuous because they were both in blue and underlined**") (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017)) (emphasis added).

Next, and finally, the Cookie Notice contains "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Id.* at 858. That is, the Cookie Notice explicitly informs visitors to the Website "Use of our website and any of our services represents your consent to the use of the cookies and acceptance of our Privacy Policy." Notice does not get any clearer than this: if you want to change the cookie settings, you easily can, or you can continue to use the site with the default cookies. But either way, you are agreeing to L'Occitane's Privacy Policy. Under *Berman*, this is an open-and-shut enforceable agreement, and L'Occitane clearly obtains all consumers' prior express consent to its use of cookies and its other information sharing practices. This alone defeats all your threatened claims, without more.

---

2 For the avoidance of doubt, the Cookie Policy disclosure L'Occitane uses is the same on both mobile and desktop sites, in terms of both form and disclosure content.

3 To be clear, L'Occitane is not suggesting that its Cookie Policy and Privacy Policy disclosure *is* a browsewrap agreement, as the notice is conspicuously displayed on the user's screen through a pop up, and the user must take affirmative action to either modify the cookie setting or accept the cookie settings as-is, after being expressly informed that continuing to use the site constitutes acceptance of the standard cookies, as well as the Website's Privacy Policy. *See Berman*, 39 F. 4th at 856. Rather, L'Occitane is demonstrating here that its website disclosures meet the *more* stringent conditions for establishing *constructive* notice under browsewrap standards.





**B. Initiating Arbitration Would Violate The Terms You Contend Your Clients Are Subject To**

One of the fundamental and irreconcilable conflicts between the threatened claims *and* your threat of mass arbitration is the implicit concession that your 2,250 unnamed clients are *all bound* to L'Occitane's website policies, and are thereby entitled to somehow enforce the Dispute Resolution and Arbitration Agreement. You cannot have it both ways. Either your clients accepted the Terms[4] (by consenting to the Cookie Notice and the Privacy Policy, which incorporates the Terms), or you have no basis to invoke the Terms' Dispute Resolution provision as a *threshold matter*. Point being, you cannot just conclusorily assert that these unnamed individuals simply "during [*sic*] past year interacted on L'Occitane's" Website *and* simultaneously threaten to invoke the Dispute Resolution provision. Mutuality of obligation, by definition, runs both ways – and your alleged clients must necessarily have agreed to L'Occitane's Terms and Privacy Policy based on your threatened enforcement of the Terms as a conceptual matter. But as *practical* matter, your unnamed clients, like every other website visitor, must have expressly consented to the Cookie Policy and Privacy Policy as soon as they visited the Website for the first time. Again, this fact alone makes these threatened claims meritless.

But even then, the scope of the Dispute Resolution provision must actually encompass the threatened claims. *See United Steelworks of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 589 (1960) (arbitration clause must be "susceptible of an interpretation that covers the asserted dispute…."). Relevant here, the Dispute Resolution provision requires that *the* "Dispute" subject to arbitration must arise out of "**any transaction conducted on the Websites**, or the breach, enforcement, interpretation, or validity of this Agreement or any part of it." Of course, you never claim that your clients ever engaged in *any* transactions with L'Occitane, let alone that they are attempting to enforce the Terms in the abstract. Again, you simply state in a form demand letter that unnamed individuals "interacted" with the Website.

Independently, your threat to "proceed to file individual arbitrations" under these circumstances **utterly fails** to satisfy the Informal Dispute Resolution provision, which provides that:

> **the party** asserting the Dispute ***shall*** first try in good faith to settle such Dispute by providing written notice to the other party (by first class or registered mail)

---

4 Including the Limitation of Liability provision that you appear to concede your clients agreed to, which notably precludes *any* liability to L'Occitane resulting from their use of the website, which is provided on an AS-IS basis.





**describing the facts and circumstances (including any relevant documentation)** …

This Informal Dispute Resolution provision is, by itself, a condition precedent to invoking the Arbitration Agreement. And here, you have not even identified *the party* – each individual person you claim to represent – let alone the actual *facts and circumstances* for *each* such individual *and* the supporting documentation showing *each* individual's supposed "interaction" with the Website. Again, you cannot have it both ways: you cannot threaten to invoke the Dispute Resolution provision, and then ignore the first half of it.[5]

The simple fact is that you have not remotely established your burden to even *threaten* arbitration against L'Occitane. If you proceed in willful disregard of the Informal Dispute Resolution provision and seek to arbitrate claims that may not even constitute Disputes, L'Occitane will seek all of its costs and attorneys' fees from your firm and your clients.[6]

## C. Your Demand Letter Evidences A Fundamental Misunderstanding Of The CIPA Claims At Issue

With due respect, the assertions in your demand letter reveal a basic misunderstanding of what is, and what is *not*, covered by the CIPA claims you threaten. While the following points are certainly not meant to be exhaustive, I am providing you with sufficient authority for you to verify that you are advancing legal theories that are meritless.

---

5 To be clear, the Informal Dispute Resolution provision must be followed, on an individualized basis, so that L'Occitane can potentially resolve any issue *informally*, but also assess whether the complaint raised by each individual falls within the scope of a Dispute. And the "information" provided in your demand letter makes it impossible to make this determination *in the aggregate*, let alone on the required individualized basis.

6 *See, e.g., Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 377,* 700 F.2d 1067, 1072 (6th Cir. 1983) (overturning district court's decision not to allow defendant to pursue "costs and attorney fees … as a measure of the actual damages which [defendant] incurred in defending the lawsuit the plaintiff instituted purportedly in violation" of the parties' agreement); *Bolton v. McKinney*, 299 Va. 550, 556, 855 S.E.2d 853, 857 (2021) ("Allowing [attorneys' fees as] damages in this circumstance compensates the injured party for its loss and puts it back in the same position in which it would have been had the other party adhered to its promise."); *Zuniga v. United Can Co*., 812 F.2d 443, 455 (9th Cir. 1987) (recognizing that American Rule does not apply where attorneys' fees are "principle elements of damages" that a party "was forced to expend" to defend its rights, and failure to allow attorneys' fees would leave party without proper remedy); *Susman v. Schuyler*, 328 So.2d 30 (1976) (recognizing that under Florida law, there are numerous instances where attorneys' fees are proper measure of damages, and ruling trial court erred in not allowing attorneys' fees incurred "as part of the costs of removing the cloud" from the claimant's title).





**1. A Party to the Communication Legally Cannot Violate Section 631**

California courts have long held that Section 631 applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Membrila v. Receivables Performance Mgmt., LLC,* No. 09-cv-2790, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (ruling that party to conversation could not have intercepted or eavesdropped, because only a third party **listening *secretly* to a *private* conversation** can do so); *see also Valenzuela v. The Kroger Co.,* No. 22-CV-6382-DMG-AGRX, 2023 WL 4418887, at *2 (C.D. Cal. June 23, 2023) (dismissing Plaintiff's claim because "[i]t is settled California law … that recording by a *participant* to the conversation does not run afoul of Section 631(a), which penalizes recording by a *third party.*") (emphasis in original).

The case *Rogers v. Ulrich* analyzes a directly analogous fact pattern. There, the defendant installed a tape recorder jack on his telephone that allowed him to record phone calls. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897 (1975). In affirming the dismissal of the Plaintiff's Section 631 claim, the court explained that it cannot be "a secret to one party to a conversation that the other party is listening to the conversation; only **a third party** can listen **secretly** to **a private conversation**." *Id.* at 899 ("'Eavesdropping' is the problem the Legislature meant to deal with; 'eavesdrop' is defined in Webster's 7th New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.'") (emphasis added); *see also Powell v. Union Pac. R.R. Co.,* 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) (granting a motion for summary judgment as to Section 631 claims against party to communication "[g]iven the settled nature of the third-party focus of section 631" and holding that party is *categorically* immune from *any* Section 631 claim); *Warden v. Kahn*, 99 Cal.App.3d 805, (1979) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

**2. Only *Communications* Are Protected under CIPA**

Curiously, you claim that the putative "interactions" your alleged clients engaged in on the Website included "mouse movements, clicks, keystrokes, scrolls, pageviews, date, time and duration of visits, and/or other personal information …" None of this is personal information, let alone a covered *communication* protected by either Section 631 or 632.7.

Specifically, Section 631(a)(ii), penalizes a person who "reads, or attempts to read, or to learn the ***contents or meaning*** of any message, report, or communication ...." Cal. Penal Code. § 631 (emphasis added). Section 632.7, in turn, only covers "communications," and specifically those transmitted by specific types of phones. The Ninth Circuit has held that the "contents" of an online communication "refers to the intended message conveyed **by the communication**, and does ***not*** include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir.





2014) (contents transmitted by Facebook.com did not include a user's Facebook ID and browsing history when automatically gathered, but it could include messages that stated that information). Simply put, there must be an underlying communication that is being *communicated* to the other party.

Indeed, it almost seems like you are copying your assertions from a decision that held the precise information you put at issue is *not* covered under CIPA:

> Yoon alleges that Quantum Metric recorded her "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." None of these pieces of data constitutes message content in the same way that the words of a text message or an email do. Thus, because she has not alleged that Quantum Metric intercepted "content," Yoon's Amended Complaint as currently pleaded does not state a claim for violation of CIPA § 631(a)[ii].

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021). Likewise, in a CIPA decision in which the district court held that your firm's argument "makes no sense," the court also summarized this fundamental limitation of CIPA claims: it only protects "the intended message conveyed by the communication." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084 (N.D. Cal. 2018).

Point being, even assuming you organized 2,250 "testers" to visit the Website, what you are claiming they did – *after* they had to accept the Cookie Policy – has been consistently found to be, at most, "record information" entirely outside the scope of CIPA. On this independent ground, you are threatening L'Occitane with meritless claims.

**3. Section 632.7 Only Applies to Wireless-Phone-to-Phone Communications**

Section 632.7 was adopted to address an "**exclusive list** of five types of **calls** …: a communication **transmitted between** (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone. According to this list of included types of telephones, the communication **must have** a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone **on the other side**." *Montantes v. Inventure Foods*, No. CV-14-1128-MWF RZX, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014) (emphasis added); *See also Byars v. Hot Topic, Inc.*, No. 22-1652-JGB-KKX, 2023 WL 2026994, at *11 (C.D. Cal. Feb. 14, 2023) (dismissing Section 631 claim because chat-service provider is extension of website operator, and dismissing Section 632.7 claim **with**





**prejudice** because that statute "applies only to communications involving two telephones. Plaintiff admits that Defendant was not using a telephone"); *Licea v. Cinmar, LLC*, 22-6454-MWF (JEM), 2023 WL 2415592, *9-11 (C.D. Cal. Mar. 7, 2023) (dismissing Section 632.7 claim **with prejudice** because statute "does not extend protection to communications over the internet" and it would be futile to claim that "communication through a website chat feature is between two telephones," as expressly required by the statute).

Simply put, there is no ambiguity in this statute. "[O]nly [the] **types of phones** listed in the statute are included," and the "communication must have a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone **on the other side**." *Inventure Foods*, 2014 WL 3305578, at *4 (emphasis added). Indeed, the California Supreme Court's most recent opinion specifically analyzing Section 632.7, *Smith v. LoanMe, Inc.*, states – in the **first sentence** of the opinion – that this statute applies to "'a communication transmitted **between**' a cellular or cordless telephone ***and another telephone***." *Id.* at 11 Cal. 5th 183, 187, 483 P.3d 869, 870 (2021) (emphasis added). Thus, according to the plain language of the statute *and* the California Supreme Court's binding interpretation, both parties *necessarily* need to be using a qualifying telephone. That is admittedly not this case according your demand letter, which generically describes your alleged unnamed clients unilaterally clicking their mouse, scrolling, clicking, and stroking their keys while on the Website. It is legitimately unclear how you can allege this *and* claim that there is even *one telephone* being used, let alone the statutorily required two. What not-so-smartphones are your alleged clients using that have mouses and keyboards attached to them? Your threatened Section 632.7 claim is fundamentally preposterous – on just your side.

To be sure, you may attempt to trot out Judge Sykes' opinion in *Goodyear* – as she is the *only* judge to have allowed a Section 632.7 claim involving a website to proceed beyond a motion to dismiss. But before you do that, you should be aware that Judge Sykes recently reversed herself, expressly incorporating Judge Bernal's *Hot Topic* decision dismantling her reasoning in her later orders directing Scott Ferrell to show cause why all his cookie-cutter CIPA complaints should not be dismissed. *See*, *e.g.,*, *Cody v. Boscov's*, Dkt. No. 56, Order to Show Cause at 4 (holding that even Ferrell's "improved" pleadings are too conclusory and fail to plausibly allege "the purported CIPA violations Plaintiff describes.") (citing *Hot Topic*).

Ultimately, the courts are once again unanimous: threatening a Section 632.7 claim because your purported clients visited a website is an objectively meritless claim.

**4. L'Occitane Cannot Aid and Abet "Non-Persons" under CIPA**

As L'Occitane's Cookie Policy clearly discloses, the software L'Occitane uses to analyze website visitor activity – on an *anonymous and aggregate* basis – is provided by Contentsquare






SAS, a French company that is organized as a *Société par actions simplifiée*, or SAS. While this form of unincorporated association has no exact American equivalent, it is closest to an LLC. In any event, it is *not* a corporation under American law.

It is also beyond dispute that the California Legislature has defined a "person" subject to the Penal Code to only embrace "a corporation as well as a natural person," and has not *generally* updated the Penal Code to include additional forms of businesses, such as LLCs, let alone SASs, within the Code's overall scope. *See* Cal. Penal Code § 7. If you intend to enforce a Cold War-era telephone wiretapping criminal statute against modern website features, instead of the actual laws the California Legislature enacted to comprehensively address online privacy issues (the CCPA), you need to ensure that this old law has kept up with the times. But simply put, it has not. As a result, L'Occitane cannot be "aiding and abetting" a "person" capable of violating the statutes at issue on this independent ground.

In fact, the California Court of Appeal addressed a directly analogous situation when interpreting the scope of the Penal Code in holding that "no mention is made of copartnerships" and it was a "fact that the copartnership itself **as a separate entity <u>may not be punished</u>**." *People v. Schomig*, 74 Cal.App. 109, 113 (1925) (emphasis added) (holding that only natural persons in their individual capacities could be liable given Penal Code Section 7's limited scope). This case is no different – L'Occitane cannot be aiding and abetting "any person" here, when the entity is a Franch SAS not subject to Sections 631 or 632.7.

Independently, the Legislature *has* updated certain CIPA statutory sections to include LLCs and other business forms within the scope of "persons" subject to those *particular* sections. For example, Section 632 provides in relevant part that "[***f***]***or the purposes of <u>this section</u>***, 'person' means an individual, business association, partnership, corporation, limited liability company, or other legal entity." Cal. Pen. Code § 632(b) (emphasis added). Clearly, the Legislature knows how to broaden the scope of entities subject to CIPA – *if* it wishes to do so. And it is a basic tenent of statutory interpretation that the Legislature is presumed to intend a distinction when it uses particular language in one section, but excludes it in another. *See, e.g., People v. McCallum*, 55 Cal. App. 5th 202, 212, 269 Cal. Rptr. 3d 336, 342–43 (2020).

At bottom, leaving aside that case after case has found that using software provided by another entity is not "third-party eavesdropping," it is legally impossible that L'Occitane can be aiding and abetting any "persons" subject to Penal Code Sections 631 or 632.7 here. Under the plain language of the Penal Code, binding precedent, and elementary rules of statutory construction, your threatened claims are nonstarters for this separate reason.





**D. CIPA Is Unconstitutional**

The legal authority above should be sufficient to convince you that your demand letter is objectively meritless simply on your inability to state a claim *under CIPA*, as a matter of law. In other words, we don't even need to get into other fact-based defenses that would defeat your threatened claims, such as L'Occitane requiring its processors, including Contentsquare, to enter into GDPR-compliant Data Processing Agreements that require these vendors to fully comply with all data privacy laws, and to only process the data pursuant to the applicable agreement for L'Occitane's business needs, and for no other purpose. And as a practical matter, L'Occitane is promptly deleting[7] the anonymized website data that it utilizes in the aggregate to improve its website, which is entirely divorced from "intercepting communications in transit to learn their contents," which is the *third-party* activity prohibited by CIPA. This is why you will never be able to properly allege that any data processed through the Website, let alone communications with L'Occitane actually within the scope of CIPA, was ever misused by any third parties.

For the avoidance of doubt, if you nevertheless attempt to assert these meritless arbitration claims against L'Occitane, you will be met with a declaratory judgment action that CIPA is unconstitutional for the *exact same reasons* the Ninth Circuit just invalidated Oregon's indistinguishable two-party consent "wiretapping" law. *See Project Veritas v. Schmidt*, No. 22-35271, 72 F. 4th 1043, 2023 WL 4308952 (9th Cir. July 3, 2023).

There, the Court of Appeals found Oregon's law a content-based restriction because, just like CIPA, "the rules imposed … vary depending on the activity being recorded…" *Id.* at 7; *Cf.* Cal. Pen. Code §§ 633.5 and 633.6 (containing nearly identical content-based exemptions to Section 631 and 632.7 claims (among others) to Oregon's law that the Ninth Circuit held fails strict scrutiny). Simply put, there is no intellectually honest way to argue that the Ninth Circuit's invalidation of Oregon's wiretapping law because it was *facially unconstitutional* should also not compel the invalidation of CIPA on the same grounds. Again, Oregon's law has nearly identical exemptions that were at the root of the Court of Appeals' analysis:

---

[7] L'Occitane's and its vendors' standard data retention practices are to purge website traffic data as soon as there is no business need for the data. This can entail purging potentially relevant IP addresses and other data within 3 days, if the data is retained at all. Point being, your demand letter is so generic and conclusory that L'Occitane has no actionable information to even begin preserving specific data relevant to your demand letter, assuming it is not already long gone, if it ever existed. Thus, to the extent this response does not end this "dispute" once and for all, L'Occitane demands that you provide detailed information concerning your purported clients, when they visited the L'Occitane Website, and what communications, if any, they transmitted through the Website – as required under the Informal Dispute Resolution provision.





| Oregon Revised Statute 165.540(5)(a) | Cal. Penal Code Section 633.5 |
|---|---|
| • The statute's prohibitions "do not apply to: (a) A person who records a conversation during **a felony that endangers human life**;" | • "Sections **631**, 632, 632.5, 632.6, and **632.7** do not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, **any felony involving violence against the person** … . |

Independently, CIPA is unconstitutionally discriminatory as applied because it expressly exempts certain third-party service providers for performing the same functions as the data processors L'Occitane contracts with to assist with its website. Specifically, Section 631(b) expressly exempts "the services and facilities of the public utility" from the scope of CIPA. The only way CIPA can pass constitutional muster today is if new entrants into the marketplace share the same protections as traditional public utilities, that is, if it does *not* favor particular service providers over others. Section 631, however, does expressly the opposite: it favors telecommunications service providers over competing information service providers, making CIPA unconstitutional as applied here on this basis alone. *See Beckles v. U.S.*, 580 U.S. 256, 262 (penal laws that "encourage arbitrary and discriminatory enforcement" are unconstitutional).

The bottom line is that CIPA is unconstitutional both as applied in an unreasonably discriminatory manner to favor communications occurring over public utility networks, *and* facially because it exempts certain communications depending on their content. There is simply no escaping that *Project Veritas* is fatal to CIPA's continued survival. So if you are looking for a quick *in terrorem* settlement under CIPA like the Scott Ferrells and Robert Taulers of the world are trying to extract right now to pay off their RICO judgments,[8] that is not going to happen. You will instead spend hundreds of hours briefing and arguing constitutional issues concerning a Cold War-era law that is well past its prime. I respectfully submit that your time would be best served moving on from L'Occitane.

---

[8] *See* https://www.reuters.com/legal/government/how-legal-brawl-over-male-enhancement-pills-led-rico-verdict-against-this-la-2023-03-24/





**NOTICE UNDER COMPUTER FRAUD AND ABUSE ACT**

L'Occitane notifies you here that anyone associated with your firm, firms you are working with on these matters, any and all undisclosed clients, Claimants, or any other individuals you represent now or in the future, are no longer authorized to visit or view the L'Occitane Website, https://www.loccitane.com/, as well as any webpages located at this domain. Please instruct your clients, employees, agents, contractors and co-counsel that they should cease and desist from any attempt to access the foregoing website, provide any information to L'Occitane, or otherwise attempt to set up any lawsuit against L'Occitane or its affiliate companies, under CIPA or otherwise.

Very truly yours,

/s/

Adam D. Bowser