JENNIFER L. KELLER (SBN 84412)
  jkeller@kelleranderle.com
CHASE A. SCOLNICK (SBN 227631)
  cscolnick@kelleranderle.com
JAY P. BARRON (SBN 245654)
  jbarron@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
(949) 476-8700 Telephone
(949) 476-0900 Facsimile

CALEB MARKER (SBN 269721)
  caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Defendant,*
*Zimmerman Reed LLP*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L'OCCITANE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>Zimmerman Reed LLP; and 3,144 Of Its Purported Clients,<br><br>Defendant(s). | Case No. 2:24-cv-01103-PA-RAO<br><br>*Assigned to the Honorable Percy Anderson*<br><br>**DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      April 1, 2024<br>Time:      1:30 PM<br>Courtroom:  9A<br><br>Complaint Filed:  February 8, 2024<br>Trial Date:      TBD |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE** that on April 1, 2024 at 1:30 PM, or as soon thereafter as the matter may be heard, in Courtroom 9A of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Zimmerman Reed LLP (hereinafter "Zimmerman Reed") will and hereby moves for an order dismissing all of Plaintiff L'Occitane's claims against Zimmerman Reed.

   This motion is made on the grounds that: (1) concerning Counts I through VI, L'Occitane has improperly failed to describe which claims are made against which Defendants, including whether these claims were made against Zimmerman Reed; and, to the extent those claims were made against Zimmerman Reed, L'Occitane lacks standing to bring those claims; and (2) concerning Count VII made under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, L'Occitane has failed to state a claim upon which relief can be granted.

   Counsel for Defendant Zimmerman Reed has also made a good faith attempt to meet and confer with Plaintiff's counsel pursuant to Civil Local Rule 7-3. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 26, 2024.

   This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the supporting Declaration of Caleb Marker, any other documents and arguments submitted in support of this Motion, and upon any arguments that may be presented during any hearing for this matter.

   Respectfully submitted,

Dated: March 4, 2023          KELLER/ANDERLE LLP


   By:   */s/ Chase A. Scolnick*   _____

         JENNIFER L. KELLER (SBN 84412)
         jkeller@kelleranderle.com
         CHASE A. SCOLNICK (SBN 227631)

cscolnick@kelleranderle.com
JAY P. BARRON (SBN 245654)
jbarron@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
(949) 476-8700 Telephone
(949) 476-0900 Facsimile

CALEB MARKER (SBN 269721)
caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Defendant, Zimmerman Reed LLP*

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 3

        A.      Zimmerman Reed Notified L'Occitane of Claimants' CIPA Claims, Which
                Are Asserted in Arbitration Per L'Occitane's Own Terms And Conditions  3

        B.      L'Occitane Filed This Complaint Asserting Baseless Allegations Against
                Zimmerman Reed .................................................................................... 4

III.    LEGAL STANDARD .......................................................................................... 6

IV.     ARGUMENT ....................................................................................................... 6

        A.      The Court Should Dismiss the CFAA Claims As Legally Deficient And
                Lacking Factual Specificity ........................................................................ 6

                1.      Visiting a Public Website Does Not Violate the CFAA Under
                        Binding Ninth Circuit Precedent ..................................................... 7

                2.      L'Occitane Fails to Allege Zimmerman Reed and the Claimants
                        Conspired to Violate the CFAA Under § 1030(b) ........................... 10

                        a)  L'Occitane's Allegations Do Not Satisfy Rule 9(b) ................. 11

                        b)  L'Occitane Cannot Plausibly Allege a Conspiracy on
                            "Information and Belief" ............................................................ 13

                3.      L'Occitane Failed to Adequately Plead a Violation or Attempt to
                        Violate 18 U.S.C. § 1030(a) ........................................................... 14

                        a)  L'Occitane Fails to Allege Any Damage or Threat to Damage a
                            Computer ...................................................................................... 16

                        b)  L'Occitane Fails to Allege Zimmerman Reed Obtained Private
                            Information or Anything of Value ............................................. 17

        B.      The Court Should Dismiss Counts I Through VI Because L'Occitane Lacks
                Standing To Bring Those Claims Against Zimmerman Reed .................. 19

V.      CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Alfus v. Pyramid Tech. Corp.*,
    745 F. Supp. 1511 (N.D. Cal. 1990) ................................................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 6

*Bumagat v. Shillinger*, No. 2:17-cv-2008,
    2019 WL 1382495 (E.D. Cal. Mar. 27, 2019) ........................................... 6, 10

*Chegg, Inc. v. Doe*, No. 22-cv-07326,
    2023 WL 4315540 (N.D. Cal. July 3, 2023) .................................................. 17

*City of Colton v. American Promotional Events, Inc.-West*,
    614 F.3d 998 (9th Cir. 2010) .......................................................................... 21

*Delphix Corp. v. Actifo, Inc.*, No. 13-cv-4613,
    2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ............................................... 13

*Facebook, Inc. v. ILikeAd Media In'tl Co. Ltd.*, No. 19-cv-07971,
    2022 WL 2289064 (N.D. Cal. Feb. 1, 2022) .................................................. 14

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13–cv–00784,
    2013 WL 3872950 (E.D. Cal. July 25, 2013) ................................................ 16

*George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-cv-0424,
    2022 WL 17330467 (S.D. Cal. Nov. 29, 2022) .............................................. 21

*Henry's Bullfrog Bees v. Sunland Trading, Inc.*, No. 3:21-cv-0582,
    2022 WL 583639 (E.D. Cal. Feb. 25, 2022) ................................................... 12

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ............................................................. 7, 8, 9, 17

*Jensen v. Sweet Home One Care Facility*, No. 00-cv-3261,
    2005 WL 873310 (N.D. Cal. Jan. 31, 2005) ................................................... 13

*Latham v. PWCC Marketplace, LLC*, No. 3:21-cv-1381,
    2022 WL 226807 (D. Or. Jan. 25, 2022) ....................................................... 12

*Martinez v. City of W. Sacramento*, No. 2:16-cv-02566,
    2021 WL 2227830 (E.D. Cal. June 2, 2021) .................................................. 13

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ..................................................................... 19, 20

*Melrose Place Holdings v. Socotra Opp. Fund, LLC*, No. 22-cv-01329,
  2022 WL 3013226 (C.D. Cal. May 31, 2022) ............................................ 11

*Mirch v. Frank*, No. 01-cv-0443,
  2004 WL 7341517 (D. Nev. Aug. 20, 2004) ............................................... 5

*Nelson v. Dollar Tree Stores, Inc.*, No. 2:11-cv-1334,
  2011 WL 3568498 (E.D. Cal. Aug. 5, 2011) ............................................. 19

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ..................................... 10, 11, 16, 17

*New S. Equip Mats, LLC v. Keener*,
  989 F. Supp. 2d 522 (S.D. Miss. 2013) ..................................................... 16

*Nutrivia Lab'ys, Inc. v. VBS Distribution, Inc.*, No. 13-cv-1635,
  2014 WL 12584303 (C.D. Cal. Jan. 9, 2014) ............................................. 6

*Ryanair DAC v. Booking Holdings, Inc.*,
  636 F. Supp. 3d 490 (D. Del. 2022) ............................................................ 9

*Salinas v. Cornwell Quality Tools Co.*, No. 5:19-cv-02275,
  2022 WL 3130875 (C.D. Cal. June 10, 2022) .............................. 9, 17, 18

*Sharda v. Sunrise Hospital & Med Ctr., LLC*, No. 2:16-cv-02233,
  2018 WL 11410036 (D. Nev. July 30, 2018) .............................................. 6

*TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*, No. 10-cv-1304,
  2012 WL 394229 (N.D. Ill. Feb. 1, 2012) ................................................ 16

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) .................................................................... 11

*Van Buren v. United States*,
  141 S. Ct. 1648 (2021) ..................................................................... 10, 18

*Watters v. Breja*, No. 23-cv-03183,
  2024 WL 201356 (N.D. Cal. Jan. 18, 2024) ............................................... 9

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) ............................................................... 19

*Welenco, Inc. v. Corbol*,
  126 F. Supp. 3d 1154 (E.D. Cal. 2015) ................................................... 14

**Statutes**

18 U.S.C. § 1030 ............................................................................... 6, 10, 16

28 U.S.C. § 2201 ........................................................................................ 21

Fed. R. Civ. P. 8(a) .................................................................................... 20

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

## I.   **INTRODUCTION**

Through its Complaint, Plaintiff L'Occitane, Inc., took the remarkable step of suing its own customers and potential customers (collectively, "Claimants") and their counsel, Zimmerman Reed LLP, for allegedly visiting L'Occitane's website without authorization.  There is no factual or legal basis for L'Occitane's claim, and it should be denied without leave to amend.

L'Occitane's Complaint is an inappropriate and legally deficient reaction to Claimants' pursuit of valid, arbitrable claims against L'Occitane.  Before this case was filed, Zimmerman Reed notified L'Occitane that its clients (*i.e.*, the Claimants) intended to pursue arbitration for claims arising out of L'Occitane's surreptitious use of tracking technology on its website that recorded Claimants' activities in violation of the California Information Privacy Act ("CIPA").  Claimants pursued arbitration for these well-established claims as mandated by L'Occitane's own Terms & Conditions ("Terms").  L'Occitane's Complaint is a transparent maneuver to bypass its own arbitration provision and chill and deter Claimants' pursuit of their claims.

Besides its various declaratory relief claims that seek to hold California's long-standing statutory scheme under CIPA to be unconstitutional or invalid, L'Occitane asserts a claim under the Computer Fraud and Abuse Act ("CFAA"), alleging Claimants acted illegally in pursuing the arbitrable claims.  L'Occitane bases its claim on a fabricated conspiracy between Zimmerman Reed and Claimants, and alleges Zimmerman Reed directed Claimants to visit L'Occitane's website to "manufacture" CIPA claims.  L'Occitane claims Zimmerman Reed and Claimants threatened it and sought to extort money from it by invoking the very dispute resolution process L'Occitane's Terms require (which, despite L'Occitane's initiation of this action, disavows resolution in federal court).   L'Occitane claims this "conspiracy" violated the CFAA because L'Occitane had issued a "cease-and-desist" purportedly precluding Zimmerman Reed and its clients from visiting L'Occitane's publicly-available website.

L'Occitane's CFAA claim against Zimmerman Reed does not state a legally

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

cognizable claim against the firm,[1] and the Court should dismiss the CFAA claim because it is legally unfounded, fails to allege essential elements of a CFAA, and lacks evidentiary support.

First, the Ninth Circuit has expressly rejected the legal theory L'Occitane relies on for its Complaint.  That controlling case law holds that the CFAA does *not* cover access to a public-facing website containing exclusively public information, like L'Occitane's, unless it contains some authentication measure (like usernames and passwords). L'Occitane's website does not contain such a measure, and L'Occitane has not alleged that it does. Therefore, L'Occitane cannot base a CFAA claim on its telling Zimmerman Reed and Claimants not to visit L'Occitane's website.  Any subsequent visits that Zimmerman Reed and Claimants allegedly made to L'Occitane's website cannot violate the CFAA or be the basis of its alleged "conspiracy."

Second, L'Occitane fails to plead facts adequately supporting a conspiracy in violation of the CFAA.  Although L'Occitane accuses Zimmerman Reed of "fraudulently" manufacturing claims, it does not plead facts sufficient to meet Rule 9(b)'s heightened pleading standard or even the minimum requirements in Rule 8. Instead, nearly all of L'Occitane's conspiracy allegations are made "on information and belief," underscoring it has no evidence of the conspiracy it alleges.  L'Occitane's allegations therefore are insufficient to adequately plead a conspiracy or support its CFAA claim.

Third, L'Occitane's Complaint fails to adequately plead a violation of the CFAA's prohibited acts, as required to plead a conspiracy that violates the CFAA. Although L'Occitane does not allege which provision of the CFAA Zimmerman Reed and Claimants supposedly violated, L'Occitane needs to allege: (1) damage or intent to damage its computer systems; or (2) that Zimmerman Reed and Claimants obtained or threatened to obtain private information or something of value.  L'Occitane fails to allege

---

[1]  The remaining claims are pleaded generically, but, to the extent they were made against Zimmerman Reed, they likewise fail under Federal Rules of Civil Procedure 12(b)(1) and (6).

either. It does not allege, and cannot plausibly allege, that a mere visit to its website "damaged" its computers, files, or networks, or that Zimmerman Reed or Claimants obtained any private information from accessing a public-facing website.

Fourth, the remaining claims (if L'Occitane intended to bring them against Zimmerman Reed) should be dismissed because L'Occitane fails to specify which claim is made against which Defendant, a form of "shotgun pleading" that warrants dismissal in itself. But, to the extent the claims are targeting Zimmerman Reed, the claims all fail. For each, L'Occitane seeks declaratory and injunctive relief concerning Claimants' CIPA claims. Since Zimmerman Reed is not bringing these claims on its behalf—they are brought on behalf of the Claimants' CIPA rights—neither declaratory nor injunctive relief can redress any harm, meaning L'Occitane lacks Article III standing to bring those claims against Zimmerman Reed.

L'Occitane's claims are unsupported under the law and are based on legal theories the Ninth Circuit has already rejected. The claims also have not been pled on any legitimate factual basis. The Court should dismiss the CFAA claim in its entirety, without leave to amend, and any other claim that purports to be made against Zimmerman Reed.

## II.   BACKGROUND

### A.   Zimmerman Reed Notified L'Occitane of Claimants' CIPA Claims, Which Are Asserted in Arbitration Per L'Occitane's Own Terms And Conditions

Claimants are website visitors and actual or potential customers of L'Occitane. ECF No. 1 ("Compl."). L'Occitane employed third-party technologies to record Claimants' every activity surreptitiously while they visited L'Occitane's website. *Id.,* ¶¶ 11–14. As L'Occitane admits, courts have found recording individuals on a website surreptitiously without their consent violates CIPA and other privacy-related statutes and common law. *Id.,* ¶¶ 49, 53.

Claimants retained Zimmerman Reed to represent them in pursuing claims against L'Occitane for their CIPA violations. Zimmerman Reed and Claimants adhered to L'Occitane's Terms and notified it of the claims with an offer to attempt to settle the

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

dispute. *Id.* ¶ 25. Although lawsuits related to similar misconduct have been brought as class actions in federal court, L'Occitane's Terms precluded that option (regardless of L'Occitane's attempt to circumvent them here). *Id.,* ¶ 22–23. Rather, the Terms required: (1) the parties arbitrate "any controversy, claim, action or dispute arising out of or related to any transaction conducted on the Websites, or the breach, enforcement, interpretation, or validity of this Agreement or any part of it", *id.,* ¶ 23; and (2) as a "condition precedent" to arbitration, that the "party asserting the Dispute . . . try in good faith to settle such Dispute by providing written notice to the other party", *id.,* ¶ 24.

In response to Zimmerman Reed's notice letter—a "condition precedent" to pursuing arbitration (*see id.*)—L'Occitane issued a cease-and-desist letter that, citing the CFAA, purportedly withdrew authorization from Zimmerman Reed and its clients to visit L'Occitane's publicly-available website. *Id.,* ¶ 29. Although L'Occitane acknowledges courts have found its alleged conduct violates CIPA and cites to its Terms requiring arbitration and pre-arbitration notice of claims, it mischaracterizes Claimant's notice letter under the Terms as "extortion", "threats", and settlement demands made "*in terrorem.*" *See id.,* ¶ 141.

**B.    L'Occitane Filed This Complaint Asserting Baseless Allegations Against Zimmerman Reed**

On behalf of Claimants, in November 2023, Zimmerman Reed began initiating arbitrations in AAA consistent with L'Occitane's Terms. Rather than engage in those arbitrations, L'Occitane sued Claimants (its own customers and shoppers) and their legal counsel, Zimmerman Reed, in this Court. Its lawsuit almost entirely re-raises its purported defenses to Claimants' CIPA claim, which focus on seeking a declaration that the CIPA is unconstitutional and/or preempted by other federal law. *See, e.g.*, ¶¶ 77–128. To that end, it seeks declaratory and injunctive relief seeking to prevent Claimants from pursuing their CIPA claims against L'Occitane. Whether those claims were also made against Zimmerman Reed (even though it does not bring a CIPA claim on its own behalf),

is unclear because L'Occitane's Complaint does not specify which claim is brought against which Defendant.

To justify its CFAA claim, L'Occitane fabricated an alleged scheme whereby Zimmerman Reed and Claimants "conspired" to manufacture CIPA claims by visiting L'Occitane's website without permission. *Id.,* ¶ 141. L'Occitane has no evidence of the alleged conspiracy.  None exists. Repeatedly relying on assertions made "on information and belief," L'Occitane claims Zimmerman Reed directed the Claimants to visit L'Occitane's website without authorization to generate CIPA claims against it. *See id.,* ¶¶ 30, 35–36, 54, n.9, 137, 139–40. L'Occitane does not cite to any communication, Zimmerman Reed's public advertisements, its public website, or any other material, as providing a basis for the claim. Likewise, it makes no effort to describe how Zimmerman Reed supposedly identified thousands of individuals willing to join in a "conspiracy" (including, apparently, L'Occitane customers and shoppers, *id.* at ¶ 140). By L'Occitane's own allegations, most Claimants had claims based on visits to L'Occitane's website *before* L'Occitane attempted to withdraw authorization to its public-facing website. *Id.,* ¶ 131–32 (describing Zimmerman Reed's notice of approximately 2,250 Claimants on September 6, 2023, a month before L'Occitane's cease-and-desist).

Zimmerman Reed moves to dismiss the CFAA claim, which finds no support in the law or in fact,[2] and the remaining claims to the extent they were brought against Zimmerman Reed.

---

[2] By naming Zimmerman Reed as part of its fraudulent conspiracy claims, L'Occitane inappropriately undermined Zimmerman Reed's ability to represent its clients. Given that the conspiracy claim is baseless (being supported exclusively by allegations made "on information and belief"), L'Occitane appears to be using this lawsuit to interfere with the claims against it and to disrupt legal representation of the Claimants in bad faith. *See Mirch v. Frank*, No. 01-cv-0443, 2004 WL 7341517, at *8 (D. Nev. Aug. 20, 2004) ("Th[e] reckless behavior caused harm to both [the law firm] and its clients . . . by interfering with their attorney-client relationship" and that "reckless and knowing conduct with the intent to harass [the parties] . . . is tantamount to bad faith[.]").

### III. <u>LEGAL STANDARD</u>

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Nutrivia Lab'ys, Inc. v. VBS Distribution, Inc.*, No. 13-cv-1635, 2014 WL 12584303, at *1 (C.D. Cal. Jan. 9, 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sharda v. Sunrise Hospital & Med Ctr., LLC*, No. 2:16-cv-02233, 2018 WL 11410036, at *2 (D. Nev. July 30, 2018). However, "a formulaic recitation of the elements of a cause of action will not suffice." *Id.*

Further, conclusory allegations must be disregarded. *Ashcroft*, 556 U.S. at 681. The Court is not "required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint" and the Court need "not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Bumagat v. Shillinger*, No. 2:17-cv-2008, 2019 WL 1382495, at *5 (E.D. Cal. Mar. 27, 2019), *report & recommendation adopted*, 2019 WL 2465138 (E.D. Cal. June 13, 2019). When a complaint pleads facts merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

### IV. <u>ARGUMENT</u>

#### A. The Court Should Dismiss the CFAA Claims As Legally Deficient And Lacking Factual Specificity

The CFAA prohibits a series of acts involving access to a computer "without authorization" or exceeding authorized access. 18 U.S.C. § 1030(a)(1)–(7). The CFAA protects against the virtual equivalent of "breaking and entering", *i.e.*, the "intentional intrusion onto someone else's computer—specifically, computer hacking[.]" *hiQ Labs,*

6

*Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022). Here, L'Occitane sued its website visitors, shoppers and their counsel because they supposedly visited L'Occitane's public website after it purported to revoke authorization for them to do so. Compl., ¶¶ 132, 139–41. L'Occitane does not contend Zimmerman Reed or its clients obtained any specific information or caused any damage to its computers, files, or electronic data. Instead, L'Occitane contends Claimants and Zimmerman Reed "simply visited L'Occitane's website" or "perhaps scrolled the website." Compl., ¶ 54, n.9. Some Claimants also allegedly purchased products L'Occitane sold, a transaction L'Occitane solicits and permitted despite having supposedly revoked their access to do so. *See id.*, ¶ 139.

This cannot form the basis for a CFAA claim for several reasons: (1) the Ninth Circuit has expressly rejected L'Occitane's theory of liability that a person violates the CFAA by visiting a public-facing website after their authorization to do so has supposedly been revoked; (2) L'Occitane fails to plead facts plausibly establishing a "conspiracy" to violate the CFAA in violation of § 1030(b); and (3) although L'Occitane fails to specify which provision in § 1030(a) Zimmerman Reed and Claimants allegedly "conspired" to violate, because L'Occitane does not allege damage or a threat of damage to a computer or that Zimmerman Reed obtained private information as a result of accessing L'Occitane's website, L'Occitane has not alleged a violation of § 1030(a) required for a CFAA claim.   At bottom, L'Occitane attempts to allege a CFAA claim that, as L'Occitane's own allegations demonstrate, has no factual or legal support.

1.   <u>Visiting a Public Website Does Not Violate the CFAA Under Binding Ninth Circuit Precedent</u>

L'Occitane bases its CFAA claim on its notice attempting to revoke authorization for Zimmerman Reed and its clients to visit its website. L'Occitane claims that, after its cease-and-desist on October 6, 2023, Zimmerman Reed and its clients continued to access L'Occitane's public website for the purpose of creating CIPA claims. L'Occitane's claim fails as a matter of law because, as the Ninth Circuit has held, accessing a public-facing

website even without "authorization" does not violate the CFAA. *hiQ Labs*, 31 F.4th at 1201.

As here, in *hiQ*, the owner of a public-facing website (LinkedIn) issued a cease-and-desist to hiQ Labs prohibiting hiQ from visiting its website. *Id.* at 1187.  LinkedIn, like L'Occitane here, issued a cease-and-desist under the CFAA. *Id.*  The Ninth Circuit described the issue before it: "[t]he pivotal CFAA question here is whether once hiQ received LinkedIn's case-and-desist letter, any further scraping and use of LinkedIn's data was 'without authorization' within the meaning of the CFAA and thus a violation of the statute." *Id.* at 1195. The Ninth Circuit held hiQ had likely not violated the CFAA by visiting LinkedIn's website even after LinkedIn sent its cease-and-desist, explaining:

> [T]he CFAA's prohibition on accessing a computer 'without authorization' is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer.  It is likely that when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA.

*Id.* at 1201.

Examining the CFAA and its legislative history, the Ninth Circuit concluded that "[t]he legislative history of section 1030 thus makes clear that the prohibition on unauthorized access is properly understood to apply only to ***private information***—information delineated as private through use of a permission requirement of some sort." *Id.* at 1197 (emphasis added). "With regard to websites made freely accessible on the Internet, . . . the concept of 'without authorization' is inapt." *Id.* at 1198; *see also id.* at 1196 ("Where the default is free access without authorization, in ordinary parlance one would characterize selective denial of access as a ban, not as a lack of 'authorization.'"). In other words, when there are no limitations on or "gates" determining access to a computer, as is the case with a public-facing website, there is no "authorization" to give or withhold. *See id.* at 1198–99.

Other courts have also interpreted the CFAA as inapplicable to public websites

which, because of their public nature, do not require authorization for access, nor can authorization be revoked. *See Watters v. Breja*, No. 23-cv-03183, 2024 WL 201356, at *3 (N.D. Cal. Jan. 18, 2024) ("This distinction is significant because [defendant's] accessing of a public, unrestricted webpage cannot constitute 'access without authorization,' given that no threshold authorization is required."); *Ryanair DAC v. Booking Holdings, Inc.*, 636 F. Supp. 3d 490, 508 (D. Del. 2022) ("[I]n order for the CFAA's 'without authorization' and 'exceeds authorized access' elements to apply, some sort of authentication mechanism (e.g., the use of usernames and passwords) must be employed to limit access to the website. If the information on the website is publicly available without requiring users to authenticate themselves, a violation of the terms of use or the defiance of a cease-and-desist letter will not give rise to liability under the CFAA."); *Salinas v. Cornwell Quality Tools Co.*, No. 5:19-cv-02275, 2022 WL 3130875, at *6 (C.D. Cal. June 10, 2022) (noting the need to "avoid turning the CFAA, a 'criminal hacking statute,' into a 'sweeping Internet-policing mandate.'" (*quoting hiQ*, 31 F.4th at 1200–01).[3]

Here, L'Occitane does not allege it uses any mechanism to control access or to grant or withhold authorization to its public website, or that Claimants or Zimmerman Reed breached that mechanism. Indeed, as its own complaint acknowledges, purportedly unauthorized individuals freely accessed the website, made accounts, and purchased goods there. Compl., ¶¶ 136, 139. L'Occitane, therefore, cannot withdraw authorization to visit its publicly-available website as it asserts to have done here, and Zimmerman Reed and Claimants cannot be found to violate the CFAA merely by visiting L'Occitane's public website.[4]   Since Zimmerman Reed and Claimants could not have visited

---

[3] The Supreme Court in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), also interpreted the CFAA narrowly to prevent it from applying to violations of the "specified terms of service" used by "websites, services, and databases[,]" because such an interpretation would "criminalize everything from embellishing an online-dating profile to using a pseudonym on Facebook." *Van Buren,* 141 S. Ct. at 1661.

[4] Even without a CFAA claim, L'Occitane would have a recourse should someone attempt the type of conspiracy it describes. Knowledge and consent are defenses to any

L'Occitane's website without authorization, they cannot be liable under the CFAA even if that alleged access was used for a purportedly improper purpose, like "manufacturing" CIPA claims. *See Van Buren*, 141 S. Ct. at 1652 (holding that the CFAA "does not cover those who . . . have improper motives for obtaining information that is otherwise available to them.").

The Ninth Circuit's binding case law rejects the foundational legal premise of L'Occitane's CFAA claims, and the conduct alleged here cannot form the basis of any legitimate CFAA claim. The Court should therefore dismiss the CFAA claim in its entirety.

### 2. L'Occitane Fails to Allege Zimmerman Reed and Claimants Conspired to Violate the CFAA Under § 1030(b)

The CFAA prohibits one from "conspir[ing] to commit or attempt[ing] to commit an offense under subsection (a) of this section." 18 U.S.C. § 1030(b). To allege a conspiracy to violate the CFAA under § 1030(b) adequately "courts have required specific allegations of an agreement and common activities to state a conspiracy claim." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014). "In the context of civil conspiracy, '[t]o survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement.'" *Id.* at 836 (quoting *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990)).

In other words, a plaintiff cannot "provide[] no factual allegations that indicate a conspiracy other than the bare statement . . . [that the parties] conspired to commit acts." *NetApp,* 41 F. Supp. 3d at 836; *see also Bumagat*, 2019 WL 1382495, at *9 ("The allegations of conspiracy are conclusory and unsupported by specific facts" and "[t]here

---

CIPA claim. Compl., ¶¶ 15, 47, 49. If Zimmerman Reed's clients visited L'Occitane's website knowing they would be recorded to gin up a CIPA claim, then they would have done so with consent, ruining the claim entirely. Instead of raising that as a defense in arbitration, and asserting it individually as its Terms require, it fabricates a plainly unsupported CFAA conspiracy and threatens damages against its actual and potential customers and their counsel.

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

is no indication of how plaintiff knows that the parties conspired against him[.]"), *report & recommendation adopted*, 2019 WL 2465138 (E.D. Cal. June 13, 2019). Moreover, where the CFAA claim is premised on fraudulent conduct, it must be plead with the heightened factual specificity required under Rule 9(b). *See NetApp*, 41 F. Supp. 3d at 834 (holding that "CFAA claims under § 1030(a)(4)" must be pleaded with specificity "when fraudulent conduct is specifically alleged as the basis for the wrongdoing.").

Here, L'Occitane fails to allege a conspiracy under § 1030(b) because: (1) its allegations do not satisfy Rule 9(b)'s pleading standard; and (2) the conspiracy is exclusively on "information and belief," lacking evidentiary support necessary to plausibly allege a conspiracy; (3) it is premised on Claimants' visiting the website despite the "cease and desist" letter, which is not effective, as discussed above; and (4) most of the Claimants are plead to have visited the website before the letter. *See, e.g.,* Compl., ¶ 131.

a)   <u>L'Occitane's Allegations Do Not Satisfy Rule 9(b)</u>

While L'Occitane does not state which subsection of § 1030(a) Zimmerman Reed and Claimants supposedly violated (let alone which claimants), L'Occitane accuses Zimmerman Reed of fraud. *See* Compl., ¶ 112. Allegations of fraud made to support a CFAA claim are subject to Rule 9(b). *NetApp*, 41 F. Supp. 3d at 834.

To satisfy Rule 9(b), a pleading must "identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Melrose Place Holdings v. Socotra Opp. Fund, LLC*, No. 22-cv-01329, 2022 WL 3013226, at *3 (C.D. Cal. May 31, 2022) (quoting *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018)). Here, L'Occitane's allegations of fraud are deficient and entirely unplausible.

L'Occitane asserts that Zimmerman Reed and Claimants coordinated to "fraudulently generate a setup CIPA claim" by visiting L'Occitane's website after it withdrew authorization. Compl., ¶ 112. But the claim is utterly devoid of details,

11

including, for example, how Zimmerman Reed would have retained thousands of individuals willing and wanting to "conspire" to generate claims; or why Zimmerman Reed would orchestrate a scheme that would *negate* a CIPA claim by informing clients of, and thereby, creating consent to, the privacy violations on L'Occitane's website. *See Latham v. PWCC Marketplace, LLC*, No. 3:21-cv-1381, 2022 WL 226807, at *2 (D. Or. Jan. 25, 2022) (finding a complaint failed to satisfy Rule 9(b) where it "allege[d] no specifics whatsoever" and relied on "barebones assertion[s.]"); *Henry's Bullfrog Bees v. Sunland Trading, Inc.*, No. 3:21-cv-0582, 2022 WL 583639, at *3 (E.D. Cal. Feb. 25, 2022) (finding allegations "riddled with . . . broad generalizations" and "bare bone conclusory allegations" fail to  satisfy Rule 9(b)).

L'Occitane also admits to using third party tools to monitor and track the activity of the website visitors, and that some courts have found that such conduct violates CIPA. Compl., ¶¶ 49, 53. It is unclear how visiting L'Occitane's website, being subjected to improper recording, and then notifying L'Occitane constitutes "fraud" when L'Occitane acknowledges courts have found those very claims valid. *See id.* L'Occitane's attempt to misconstrue Claimants' notice letter and offer to attempt to settle as a wrongful attempt to extort it, is also belied by L'Occitane's own Terms, which *require* such a notice. L'Occitane, thus, has no basis to paint Claimants' efforts as fraud.

L'Occitane also does not distinguish or explain how Claimants could have violated CFAA when the majority of Claimants necessarily visited L'Occitane's website *before* its cease-and-desist letter. As L'Occitane acknowledges, Zimmerman Reed notified it of approximately 2,250 Claimants on September 6, 2023, *before* L'Occitane withdrew authorization. *See* Compl., ¶¶ 131–32 (acknowledging 2,250 Claimants provided notice of their claim on September 6, 2023, before L'Occitane "withdrew authorization" to visit its website a month later). Yet, L'Occitane lumps in all Claimants as having "engaged in a civil conspiracy . . .  to manufacture putative CIPA claims" in violation of the CCFA. Compl., ¶ 141. In short, L'Occitane has not adequately alleged the details of the fraud,

including who supposedly committed it or how visiting a public website constitutes fraud, especially when L'Occitane admits to monitoring users there in violation of CIPA.

> b)  L'Occitane Cannot Plausibly Allege a Conspiracy on "Information and Belief"

Even under Rule 8's pleading standard, L'Occitane fails to allege specific acts that plausibly evidence a conspiracy whereby Zimmerman Reed directed its clients to visit L'Occitane's website to manufacture a CIPA claim. Virtually every paragraph related to the alleged conspiracy is made "on information and belief." *See, e.g.*, Compl., ¶¶ 30, 35–36, 54, n.9, 137, 139–40. As one court explained, "[s]imply affixing the term 'on information and belief' . . . does not grant [p]laintiffs free license to assert a multitude of specific facts without any evidentiary basis." *Martinez v. City of W. Sacramento*, No. 2:16-cv-02566, 2021 WL 2227830, at *7 (E.D. Cal. June 2, 2021); *see also Delphix Corp. v. Actifo, Inc.*, No. 13-cv-4613, 2014 WL 4628490, at *1–2 (N.D. Cal. Mar. 19, 2014) ("Despite the common appearance of that phrase in practice, it is not a recognized pleading device under the rules" and instead "creates [an] inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree.").

"Using the word 'conspiracy' repeatedly and making unsupported legal conclusions that a conspiracy existed is insufficient to prove such a claim." *Jensen v. Sweet Home One Care Facility*, No. 00-cv-3261, 2005 WL 873310, at *7 (N.D. Cal. Jan. 31, 2005), *aff'd* 180 F. App'x 703 (9th Cir. 2006).  That is all L'Occitane does here, repeatedly using the word "conspiracy," but failing to allege a single fact in support of it.

L'Occitane may argue such evidence is not available to it—which would be false, since it could have easily viewed Zimmerman Reed's advertisements or its webpage informing the public that individuals who had *previously* visited L'Occitane's website may have a claim. Yet, it should have evidence of supposed communications from Zimmerman Reed to L'Occitane attempting to "extort[]" it, Compl., ¶ 141; "threat[ening] to continue accessing L'Occitane's website . . . to continue manufacturing extortionary

CIPA claims", *id.*; or threats made to extract settlements or pursue settlement "*in terrorem,*" *id.* at ¶¶ 30, 141. It cites no such communications from Zimmerman Reed because none exist.

Instead, L'Occitane cites only a letter Zimmerman Reed sent to L'Occitane notifying it of Claimants' claims and then admits such notice is a "condition precedent" to pursuing a claim under its Terms. *Id.,* ¶ 24 (acknowledging a "condition precedent" to arbitration under its Terms that "the party asserting the Dispute shall first try in good faith to settle such Dispute by providing written notice to the other party[.]"). In other words, the alleged conspiracy to "extort" money and demand settlement "*in terrorem*" was nothing more than Zimmerman Reed and Claimants' efforts to follow L'Occitane's own Terms. Its conspiracy allegations are not supported and are implausible. L'Occitane has, therefore, failed to plausibly allege a conspiracy under § 1030(b).[5]

### 3. L'Occitane Failed to Adequately Plead a Violation or Attempt to Violate 18 U.S.C. § 1030(a)

To allege a "conspiracy" to violate the CFAA, L'Occitane must also allege an offense under § 1030(a) that the parties violated or attempted to violate. *See Welenco, Inc. v. Corbol*, 126 F. Supp. 3d 1154, 1176 (E.D. Cal. 2015) ("Without a showing of any attempts to violate the statute, there is no triable issue of a conspiracy to do so."); *see also Facebook, Inc. v. ILikeAd Media In'tl Co. Ltd.*, No. 19-cv-07971, 2022 WL 2289064, at *3 (N.D. Cal. Feb. 1, 2022) ("And to state a claim under Section 1030(b), [p]laintiff needs

---

[5] L'Occitane asks that the Court infer a conspiracy from the fact the number of Claimants increased from September 6, 2023 (when Zimmerman Reed first notified L'Occitane of the disputes) to October 20, 2023 (when Zimmerman Reed provided the list of Claimants). Yet, L'Occitane does not explain how Zimmerman Reed would have been retained by thousands of individuals who were willing and wanting to manufacture claims in a conspiracy. L'Occitane certainly does not cite to or provide any advertisements of Zimmerman Reed's seeking co-conspirators. And, L'Occitane entirely glosses by the fact that any attempt by Zimmerman Reed to "manufacture" a claim by directing clients to L'Occitane's website would ruin the claim and render it untenable. *See supra*, note 3. The new clients that retained Zimmerman Reed after September 6, 2023 did so by the same manner as those who retained Zimmerman Reed before that date—by responding to Zimmerman Reed's advertisements notifying the public that those who ***previously*** visited L'Occitane's website may have a privacy claim. There are no facts that Zimmerman Reed directed Claimants to visit the website.

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

to allege that [d]efendants conspired to commit one of the foregoing subsections."), *report & recommendation adopted*, 2022 WL 2289058 (N.D. Cal. Mar. 15, 2022).

Section 1030(a) contains seven categories of acts prohibited under the CFAA. Here, L'Occitane fails to specify which subsection of § 1030(a) Zimmerman Reed or Claimants purportedly violated. *See, e.g.*, Compl., ¶¶ 129–45. But, to allege a violation of any of those provisions adequately, L'Occitane would at least need to allege that the access to its website resulted in: (1) damage or a threat to damage L'Occitane's computer; or (2) Zimmerman Reed and Claimants' obtaining or threatening to obtain information or something of value.

Specifically, the relevant predicate acts require the following: [6]

(1) Subsection (a)(2)(C) requires "access[ing] a computer without authorization" to "**obtain[] . . . information** from any protected computer" (emphasis added);

(2) Subsection (a)(4) requires "knowingly and with intent to defraud, access[ing] a protected computer without authorization" and "by means of such conduct further[ing] the intended fraud and **obtain[ing] anything of value**" (emphasis added);

(3) Subsection (a)(5) requires actions intended to "intentionally **cause[] damage** . . . to a protected computer," "recklessly **cause[] damage**" or "**cause[] damage** and loss" (emphasis added); and

(4) Subsection (a)(7) requires intention to extort money or something of value through a "threat to **cause damage**", "threat to **obtain information** from a protected computer without authorization" or cause "**damage** . . . to facilitate the extortion" (emphasis added).

---

[6] Several of the predicate acts are inapplicable here, including Subsection (a)(1) (concerning access to government-protected information); (a)(2)(A and (C) (requiring obtaining financial information or information from U.S. department or agency); (a)(3) (accessing certain nonpublic information of a U.S. department or agency); and, (a)(6) (intending to traffic passwords or similar information that permits access to a computer without authorization). There is no allegation suggesting a violation of any of those provisions.

L'Occitane, however, does not allege either predicate. It fails to explain how visiting its public website, which millions of individuals do monthly, caused any damage or involved a threat of damage to any computer or information contained therein. It also fails to specify what private "information" Zimmerman Reed and Claimants supposedly obtained by visiting its public website. L'Occitane therefore fails to state a CIPA claim because it has not alleged a violation or attempt to violate any of § 1030(a)'s provisions.

a)   L'Occitane Fails to Allege Any Damage or Threat to Damage a Computer

Several of the relevant predicate acts under § 1030(a) require either damage or intent to damage a protected computer. Under the CFAA, "damage" means "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* at § 1030(e)(8).

Courts interpret "damage" under the CFAA to mean "harm to computers or networks" rather than economic harm. *NetApp*, 41 F. Supp. 3d at 834–35; *Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13–cv–00784, 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013) ("Indeed, a number of courts have noted that costs not related to computer impairment or computer damages are not compensable under the CFAA." (internal quotations omitted)). Specifically, "[i]n construing the term 'damage,' courts have consistently held that 'damage' refers to 'the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any 'diminution in the completeness or usability of the data on a computer system.'" *New S. Equip Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 529 (S.D. Miss. 2013) (quoting *TriTeq Lock & Sec. LLC v. Innovative Secured Solutions, LLC*, No. 10-cv-1304, 2012 WL 394229, at *6 (N.D. Ill. Feb. 1, 2012) (collecting cases holding the same)).

Here, L'Occitane fails to allege any impairment to any physical or electronic aspect of its computers resulting from the alleged conspiracy. Rather, the damages L'Occitane claims it experienced exclusively concern economic harm. *See* Compl., ¶ 143 (claiming damages for "increased data storage costs, expenses, including attorneys' fees and lost

employee time"). But economic harm plainly fails to satisfy the damages requirement for an actionable violation under §§ 1030(a)(5) or (7). *NetApp*, 41 F. Supp. 3d at 834.

Additionally, any attempt to claim damages to L'Occitane's computers or files is likewise meritless. The alleged CFAA violation here is visiting L'Occitane's public-facing website, which millions of users do monthly. Compl., ¶ 1, ¶ 54, n.9. L'Occitane alleged it "believes that most, if not all, of [the Claimants] . . . appear to have simply visited L'Occitane's website" and "perhaps scrolled the website." *Id.*, ¶ 54, n.9 (emphasis omitted). L'Occitane cannot plausibly claim "most if not all" of Claimants or other people visiting or scrolling through its website caused damage to its computers or systems. *See, e.g.*, *Chegg, Inc. v. Doe*, No. 22-cv-07326, 2023 WL 4315540, at *3, n. 5 (N.D. Cal. July 3, 2023) (rejecting the claim that data was damaged where a defendant "took [plaintiff's publicly available] data and used it for its own purposes" and "the data that remains is in [no] way compromised or unavailable for [plaintiff's] own use.").

Finally, L'Occitane benefited from some of the allegedly "unauthorized" access to its website. L'Occitane highlights one supposed wrongdoer who "made a purchase on December 28, 2023, months after being on notice . . . she was no longer authorized to access the Website." Compl.*,* ¶ 139.  L'Occitane does not allege it declined the purchase or refunded the purchase payment.

                   b)   <u>L'Occitane Fails to Allege Zimmerman Reed Obtained Private Information or Anything of Value</u>

The remaining predicate acts require Zimmerman Reed or its clients to have obtained or threatened to obtain information or something of value via the unauthorized access to L'Occitane's website. "[T]he prohibition on 'unauthorized access' applies only to private information." *Salinas,* 2022 WL 3130875, at *5; *see also hiQ Labs*, 31 F.4th at 1197 ("[T]he prohibition on unauthorized access is properly understood to apply only to private information" and "information delineated as private through use of a permission requirement of some sort.").

Here, there is no allegation that Zimmerman Reed or Claimants obtained *any* information, much less private information. L'Occitane makes the conclusory claim that Zimmerman Reed and Claimants "obtained information" by accessing L'Occitane's website. *See* Compl., ¶ 138 ("By doing so, Ms. Eshelby obtained information from a protected computer that she was not authorized to access."), ¶ 139 (alleging "numerous other[s] . . . accessed L'Occitane's website and obtained information . . . ."), ¶ 140 (alleging "Zimmerman Reed . . . continued to access L'Occitane's website . . . to obtain information from L'Occitane's protected computer[.]").

But none of these allegations specify *what* information Zimmerman Reed and Claimants supposedly obtained. Moreover, L'Occitane does not allege Zimmerman Reed and Claimants accessed any "private information" of the type protected by the CFAA simply by their allegedly visiting a public website. *See Salinas*, 2022 WL 3130875, at *7–8 ("[P]laintiff's counsel have repeatedly stated they accessed documents on defendant's public website that had no password protection. . . . In short, nothing in the record indicates plaintiff's counsel intentionally accessed private documents without authorization."). To the contrary, they allege Zimmerman Reed and Claimants accessed L'Occitane's public website containing publicly available information which, even if "obtained" by Zimmerman Reed and Claimants, could not violate the CFAA. *Id.*

L'Occitane also fails to allege Zimmerman Reed or Claimants obtained anything else of value from having visited its website. At most, they allege Zimmerman Reed and Claimants "manufactured" arbitrable CIPA claims. *See, e.g.*, Compl., ¶ 134. Even if that was the case and a "claim" constituted a thing of value, L'Occitane's Terms relegate its clams against Claimants to arbitration, which is exactly what Claimants attempted to pursue. In addition, the Supreme Court has squarely held that an improper purpose does not transform authorized access into a CFAA claim. *Van Buren*, 141 S. Ct. at 1652 ("[The CFAA] covers those who obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend. It does not cover those who, like [defendant], have improper motives for obtaining information

that is otherwise available to them."). Had Zimmerman Reed and Claimants orchestrated the scheme L'Occitane imagines (which they did not), it still would not violate the CFAA. L'Occitane has, thus, failed to allege a CFAA claim, warranting its dismissal.

## B. The Court Should Dismiss Counts I Through VI Because L'Occitane Lacks Standing To Bring Those Claims Against Zimmerman Reed

The Court also should dismiss the remaining claims under Rules 12(b)(1) or (6) to the extent they are brought against Zimmerman Reed.  L'Occitane fails to expressly identify which claims are made against Zimmerman Reed, a failure which itself warrants dismissal of the claims.  *See Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("[T]here is the relatively rare sin of asserting multiple claims against multiple defendants without specifying . . . which of the defendants the claim is brought against.  The unifying characteristic of all types of shotgun pleading is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claims rests.").

The failure to specify whether the six declaratory relief counts were made against Zimmerman Reed cannot be cured by amending the pleadings because L'Occitane lacks standing to bring these claims against Zimmerman Reed.  That is because the claims exclusively request declaratory and injunctive relief seeking to prevent anyone from bringing CIPA claims against it or pursuing those claims in arbitration.  Compl., ¶¶ 87, 92, 106, 113, 119, 128.  Zimmerman Reed does not bring such a claim on its own behalf, meaning neither declaratory nor injunctive relief against Zimmerman Reed could redress any actual or threatened injury to L'Occitane.  *See Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (finding no standing where "[plaintiff] suffer[e]d an actual, ongoing injury" but where it "[did] not agree that a declaratory judgment would likely redress that injury."); *Nelson v. Dollar Tree Stores, Inc.*, No. 2:11-cv-1334, 2011 WL 3568498, at *5 (E.D. Cal. Aug. 5, 2011) ("Plaintiff's request for injunctive relief is not available to him as a matter of law . . . because they would not stand to benefit from an injunction[.]" (internal quotations omitted)).  The same is true of L'Occitane's request

that the Court declare Zimmerman Reed from having violated CIPA (*see* Compl. ¶ 40), which would not remedy any alleged harm (because L'Occitane alleges no harm due to Zimmerman Reed's purported violation of CIPA). *Mayfield*, 599 F.3d at 969 ("[T]he plaintiff must have suffered an 'injury in fact,'" and must do so "separately for each form of relief sought." (internal quotations omitted)). That naked claim for relief in the Prayer also is untethered to any cause of action and therefore fails under Rule 8. *See, e.g.*, Fed. R. Civ. P. 8(a) (requiring statement "showing that the pleader is entitled to relief").

Examining Counts I through VI makes that clear. Those Counts request that the Court declare: (1) CIPA violates the First Amendment of the U.S. Constitution; (2) CIPA constitutes an unconstitutional time, place, and manner restriction on speech; (3) §§ 631 and 632.7 violate the Fifth and Fourteenth Amendments of the U.S. Constitution; (4) the parties did not enter into an agreement; (5) the Claimants have not satisfied the information dispute resolution process; and (6) the Claimants' pursuit of their claims violates the Communications Decency Act. To effectuate the requested declarations, L'Occitane seeks "injunctive and equitable relief as is necessary to protect L'Occitane from Defendants'" claims. Compl., ¶¶ 87, 92, 106, 113, 119, 128. Zimmerman Reed, however, does not assert such a claim on its behalf, meaning the requested declarations and injunctions cannot redress any harm, at least as to Zimmerman Reed.[7]

If L'Occitane intended to pursue injunctive and declaratory relief against Zimmerman Reed, it would plainly be overbroad and potentially preclude Zimmerman Reed from the legitimate practice of law, including its representation of Claimants or other clients as to "any claim" including any non-CIPA claim.[8] *See, e.g.*, Compl., p. 39,

---

[7] L'Occitane alleges Zimmerman Reed visited, and has continued to visit, its website. *See, e.g.*, Compl. ¶ 140. Yet, Zimmerman Reed has not brought a claim in its own name, indicating there is not an imminent act warranting an injunction against Zimmerman Reed.

[8] L'Occitane also plainly lacks standing to request the Court declare Zimmerman Reed in violation of CIPA, as it alleges no injury as to any such supposed violation. *Mayfield*, 599 F.3d at 969 ("[T]he plaintiff must have suffered an 'injury in fact,'" and must do so "separately for each form of relief sought." (internal quotations omitted)).

¶ 7 (requesting, in its "Prayer for Relief", an injunction "restrain[ing] all Defendants . . . perpetually from seeking to compel L'Occitane to arbitrate ***any claim*** with the foregoing individuals[,]"); *id.* at p. 39, ¶ 4 (requesting the Court enjoin Defendants "perpetually from asserting claims under CIPA arising under the same facts and circumstances against L'Occitane."). While Zimmerman Reed believes L'Occitane did not intend such an overbroad result, it is not clear from its Complaint.[9] Regardless, the Court should dismiss Counts I through VI for lack of standing to the extent those claims were made against Zimmerman Reed.

## V.   <u>**CONCLUSION**</u>

For the reasons stated herein, the Court should dismiss the CFAA claim in its entirety as well as any other claim intended to be asserted against Zimmerman Reed.

---

[9] To the extent L'Occitane responds and clarifies that it brings one or more of Counts I through VI against Zimmerman Reed, then Zimmerman Reed requests an opportunity to supplement its briefing to dismiss those claims under Fed. R. Civ. P. 12(b)(6). As it stands, L'Occitane's Complaint does not put them on notice of which claim is made against them, which, quintessentially, is a failure to state a claim under Rule 12. *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-cv-0424, 2022 WL 17330467, at *15 (S.D. Cal. Nov. 29, 2022) ("[S]hotgun pleading overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed response to the plaintiffs' allegations" and, thereby, "abdicates [the] duty under Rule 8(a)(2)" and "leaves it to the defendant (and the court) to piece together the allegations and claims[.]"). To the extent any of the declaratory relief claims are asserted against Zimmerman Reed, they also would fail because there is no justiciable "case" or "controversy. *See, e.g.*, 28 U.S.C. § 2201; *City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998, 1004-05 (9th Cir. 2010) (alleged controversy is not ripe unless it is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). For example, any alleged relief against Zimmerman Reed on the declaratory relief claims would stem not from current law but from a potential future scenario where L'Occitane's succeeds on its claim that the CIPA is unconstitutional—which itself targets the State of California's statutory scheme in general (and not Zimmerman Reed specifically).

1                            Respectfully submitted,

2  Dated: March 4, 2024            KELLER/ANDERLE LLP

3

4                  By:    */s/ Chase A. Scolnick*          

5

6                            JENNIFER L. KELLER (SBN 84412)
                           jkeller@kelleranderle.com

7                            CHASE A. SCOLNICK (SBN 227631)
                           cscolnick@kelleranderle.com

8                            JAY P. BARRON (SBN 245654)
                           jbarron@kelleranderle.com

9                            KELLER/ANDERLE LLP

10                           18300 Von Karman Ave., Suite 930
                          Irvine, CA 92612

11                           (949) 476-8700 Telephone

12                           (949) 476-0900 Facsimile

13

14                           CALEB MARKER (SBN 269721)
                          caleb.marker@zimmreed.com

15                           ZIMMERMAN REED LLP
                          6420 Wilshire Blvd, Suite 1080

16                           Los Angeles, CA 90048

17                           (877) 500-8780 Telephone
                          (877) 500-8781 Facsimile

18

19                           *Attorneys for Defendant, Zimmerman Reed LLP*

20

21

22

23

24

25

26

27

28

DEFENDANT ZIMMERMAN REED LLP'S NOTICE OF MOTION AND MOTION TO DISMISS

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Zimmerman Reed LLP, certifies that this brief complies with the 25 page limit set by Paragraph 6(b) of the Court's Standing Order (ECF No. 13).


Dated: March 4, 2024                    _/s/ Chase A. Scolnick_____
                                        Chase A. Scolnick