JENNIFER L. KELLER (SBN 84412)
  jkeller@kelleranderle.com
CHASE A. SCOLNICK (SBN 227631)
  cscolnick@kelleranderle.com
JAY P. BARRON (SBN 245654)
  jbarron@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
(949) 476-8700 Telephone
(949) 476-0900 Facsimile

CALEB MARKER (SBN 269721)
  caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Defendant,*
*Zimmerman Reed LLP*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L'OCCITANE, INC., | Case No. 2:24-cv-01103-PA-RAO |
| Plaintiff, | *Assigned to the Honorable Percy Anderson* |
| v. | **REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS** |
| Zimmerman Reed LLP; and 3,144 Of Its Purported Clients, | Date:            April 15, 2024<br>Time:            1:30 PM<br>Courtroom:    9A |
| Defendant(s). | Complaint Filed: February 8, 2024<br>Trial Date:        TBD |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     L'OCCITANE'S CFAA CLAIM FAILS AS A MATTER OF LAW ...................... 2

    A.    L'Occitane's Attempt To Dismiss The Ninth Circuit's Controlling Opinion
       in *hiQ Labs, Inc. v. LinkedIn Corp*. Is Unavailing ....................................... 3

    B.    The *hiQ* Court Held that Public Websites Cannot Be Accessed "Without
       Authorization" in Violation of the CFAA ...................................................... 4

    C.    The *hiQ* Court Expressly Distinguished *Power Ventures* and *Nosal* ........... 5

    D.    The *hiQ* Court Rejected L'Occitane's Statutory Arguments ....................... 6

    E.    L'Occitane Failed to Establish the Other Elements of § 1030(a) ............... 6

        1.    Neither Zimmerman Reed Nor Claimants Obtained Private
           Information.......................................................................................... 7

        2.    L'Occitane Fails to Allege Zimmerman Reed Obtained Something of
           Value................................................................................................... 7

    F.    L'Occitane Fails to Adequately Allege Or Reasonably Support Its Bald
       (And False) Claim That Zimmerman Reed Engaged In A Conspiracy With
       Its Clients.......................................................................................................... 8

III.    L'OCCITANE LACKS STANDING TO BRING ANY OF THE REMAINING
    CLAIMS AGAINST ZIMMERMAN REED...................................................... 11

IV.     CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)................................................................................... 11

*Buick v. World Savings Bank*,
  637 F. Supp.2d 765 (E.D. Cal. 2008)......................................................... 10

*Chavez v. Robinson*,
  817 F.3d 1162 (9th Cir. 2016)...................................................................... 8

*Circuit City Stores, Inc. v. Najd*,
  294 F.3d 1104 (9th Cir. 2002)...................................................................... 8

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021)........................................................................ 3

*E. Bay Sanctuary Covenant v. Trump*,
  354 F. Supp. 3d 1094 (N.D. Cal. 2018) ....................................................... 3

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016)...................................................................... 5

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022)............................................................... passim

*Jensen v. Sweet Home One Care Facility*,
  No. 00-cv-3261, 2005 WL 873310 (N.D. Cal. Jan. 31, 2005) ..................... 9

*Lanard Toys Ltd. v. Dimple Child LLC*,
  No. CV 19-616 PA (Ex), 2021 WL 1577784 (C.D. Cal. Apr. 21, 2021) .................. 11

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992)..................................................................................... 12

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp.3d 1218 (N.D. Cal. 2022) ......................................................... 3

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ............................................................ 9

*Salinas v. Cornwell Quality Tools Co.*,
  No. 5:19-cv-2275, 2022 WL 3130875 (C.D. Cal. June 10, 2022) ......................... 6, 7

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
  65 F.4th 1012 (9th Cir. 2023)...................................................................... 12

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)......................................................................... 9

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..................................................................................... 12

REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS

*United States v. Nosal*,
  844 F.3d 1024 (9th Cir. 2016) ............................................................... 5, 6

*Van Buren v. United States*,
  141 S. Ct. 1648 (2021) ............................................................................. 6

*Wescott v. Daniel*,
  2022 WL 1105079 (N.D. Cal. Apr. 13, 2022) ...................................... 11

**Statutes**

18 U.S.C. § 1030 .............................................................................. 4, 6, 8

Cal. Civ. Code § 1714.10 ...................................................................... 11

I.    **INTRODUCTION**

Plaintiff L'Occitane, Inc. ("L'Occitane") has no viable claim against Zimmerman Reed LLP ("Zimmerman Reed"), the law firm representing Claimants in separate arbitration proceedings.   In response to Zimmerman Reed's motion to dismiss, L'Occitane distorts Ninth Circuit law rejecting the very arguments L'Occitane makes here and obscures the speculative nature of its allegations of a conspiracy.

Zimmerman Reed moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss L'Occitane's Consumer Fraud and Abuse Act ("CFAA") claim.   L'Occitane has attempted to reverse engineer a CFAA claim based on arguments already specifically rejected by the Ninth Circuit.   As detailed in the motion, the Ninth Circuit in *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022), considered and rejected a CFAA claim based on identical circumstances as those here—*i.e.*, finding that a cease-and-desist letter purporting to withdraw authorization to visit a public website is ineffective and incapable of forming the basis for a CFAA claim.   Despite the direct applicability of *hiQ*, L'Occitane's opposition barely addresses it, except to erroneously claim it is non-binding.  L'Occitane cites no cases for that assertion.   And it is wrong both as a general matter (*i.e.*, orders on an appeal of a preliminary injunction are binding) and specifically as to *hiQ* (*i.e.*, *hiQ* has been recognized as having precedential value).

The *hiQ* opinion is dispositive.   In contrast, the Ninth Circuit cases on which L'Occitane relies (and incorrectly claims are "controlling" and "directly on point") are readily distinguishable, as the *hiQ* opinion itself notes.   Contrary to L'Occitane's claim that Zimmerman Reed seeks to "judicially amend" the CFAA, Zimmerman Reed seeks only to apply the Ninth Circuit's plain interpretation of it: that visiting a computer or website open to the general public and for which permission is not required cannot constitute the predicate act on which a CFAA violation can be based.

Besides the controlling *hiQ* opinion, L'Occitane's CFAA claim must fail on an even more fundamental level because it is based on an alleged conspiracy between Zimmerman Reed and its clients which L'Occitane fails to adequately allege and is

wholly unsupported and implausible. L'Occitane's opposition and other filings reveal it has no basis for the conspiracy it alleges. Claimants' CIPA claims are based on Claimants' website visits **before** retaining Zimmerman Reed. L'Occitane provides no evidence to the contrary, but instead relies exclusively on unsubstantiated allegations and asks the Court to infer a conspiracy existed. As L'Occitane acknowledges elsewhere, Zimmerman Reed advised the public that L'Occitane's website used third-party behavioral tracking and monitoring technologies, which some courts have found violate CIPA. That individuals, having already visited L'Occitane's website, viewed those ads and retained Zimmerman Reed to pursue claims in arbitration is not a conspiracy. There is no evidence—and no plausible allegations—that such visits were done at Zimmerman Reed's direction.[1] In short, L'Occitane's conspiracy is made up out of whole cloth and insufficient to state a claim.

Under Federal Rule of Civil Procedure 12(b)(1), Zimmerman Reed also seeks to dismiss Zimmerman Reed from L'Occitane's six declaratory relief claims. In its opposition, L'Occitane concedes it does not and cannot bring Counts IV and V against Zimmerman Reed. But even as to Counts I-III and VI, which concern the alleged unconstitutionality or federal preemption of CIPA, L'Occitane has not established, and cannot establish, it has standing to bring those claims against Zimmerman Reed. It is undisputed that Zimmerman Reed asserts no CIPA claim on its behalf; it merely provides legal representation to Claimants who do. Contrary to L'Occitane's argument (for which it cites no authority), Zimmerman Reed's representation of Claimants does not create standing to sue Zimmerman Reed to enjoin the Claimant's claim.

For those reasons and the reasons explained below, the Court should dismiss the CFAA claim in its entirety and all other claims against Zimmerman Reed.

## II.    L'OCCITANE'S CFAA CLAIM FAILS AS A MATTER OF LAW

---

[1]    While irrelevant to the present Motion, L'Occitane repeatedly references Zimmerman Reed's supposed use of Google Analytics to claim Zimmerman Reed uses the "same technologies" as L'Occitane. Opp'n at 22, 23. L'Occitane admits not just to using Google Analytics, but several other tools that Zimmerman Reed does not use. *See* Compl. (ECF No. 1), ¶¶ 11–14. Its attempt to conflate Zimmerman Reed's practices with its own is both wrong and irrelevant to its case.

1
2

**A.      L'Occitane's Attempt To Dismiss The Ninth Circuit's Controlling Opinion in *hiQ Labs, Inc. v. LinkedIn Corp*. Is Unavailing**

3
4

Besides L'Occitane's deficient conspiracy allegations (*see infra* at Section II.F.), its theory of CFAA liability has been squarely rejected by the Ninth Circuit.  In *hiQ Labs*,

5
6

the Ninth Circuit addressed the very issue posed here: "whether once [a defendant] receives [plaintiff's] cease-and-desist letter, any further . . . use of [plaintiff's website] . .

7
8

. was 'without authorization' within the meaning of the CFAA and thus a violation of the statute."  *hiQ,* 31 F.4th at 1195.  The *hiQ* Court held it was not.  Given the similarities,

9

*hiQ* entirely undermines L'Occitane's CFAA claim.

10
11

As in *hiQ*, L'Occitane here claims Zimmerman Reed and its clients violated the CFAA by purportedly visiting L'Occitane's website after it issued a cease-and-desist

12
13

notice, the same as *hiQ*.  L'Occitane, however, ignores *hiQ* until the very end of its brief, where it claims—incorrectly—that *hiQ* is non-binding precedent because it was decided

14

on appeal of a preliminary injunction.  Opp'n (ECF No. 42) at 28–30.  L'Occitane

15
16

provides no authority for that assertion, *see id.* at 29:1–8, and it is wrong.  The Ninth Circuit has instructed that its "preliminary injunction rulings on mixed questions of law

17
18

and fact … are the 'law of the circuit and, therefore, … relevant' as binding precedent." *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094 (N.D. Cal. 2018), *aff'd sub*

19
20

*nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) ("The published motions panel order may be binding as precedent for other panels deciding the same

21
22

issue[.]").  And, as one court explained, *hiQ's* holding "'that the concept of 'without authorization' does not apply to public websites'" was "a clear expression of [the Ninth

23
24

Circuit's] view of the law that th[e] Court is not inclined to disregard[.]"  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp.3d 1218, 1261, n.29 (N.D. Cal. 2022) (quoting *hiQ*,

25

31 F.4th at 1201).[2]

26
27
28

---

[2]    As with *hiQ*, L'Occitane also fails to address the several district court cases that adhere to *hiQ* and hold that visiting a public website or obtaining public information does not violate the CFAA. *See* Motion (ECF No. 26) at 8–10.

3

REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS

Besides being controlling authority, *hiQ also* presents persuasive precedent and includes the Ninth Circuit's assessment of the CFAA's statutory meaning and legislative history, and an examination of prior Ninth Circuit and Supreme Court precedent. *See* 31 F.4th at 1196–00. L'Occitane makes no attempt to distinguish *hiQ*. Instead, it repeats the same arguments considered and rejected by the Ninth Circuit in its opinion.

**B.    The *hiQ* Court Held that Public Websites Cannot Be Accessed "Without Authorization" in Violation of the CFAA**

A statutory prerequisite to a CFAA claim is that the defendant "accessed a computer without authorization." *See, e.g.*, 18 U.S.C. §§ 1030(a)(2)(C), (a)(4). L'Occitane claims that the Ninth Circuit defines "without authorization" as "accessing or damaging a computer without permission." Opp'n at 16. Since L'Occitane claims it "revoked permission" for Zimmerman Reed and Claimants to visit its website, it argues any subsequent visits were "without authorization" and violated the CFAA. *Id.*

The Ninth Circuit rejected that exact argument and explained that "CFAA is premised on a distinction between information presumptively accessible to the general public and information for which authorization is generally required." *Id.* at 1199–2000. Since the CFAA prohibits "access[] . . . without authorization," CFAA applies *only* to computers where "access is not generally available and so permission is ordinarily required." *Id.* "Where the default is free access without authorization . . . the selective denial of access [i]s a ban, not . . . a lack of authorization." *Id.*

To illustrate, the Court differentiated among three types of computer systems: "(1) computers for which access is open to the general public and permission is not required, (2) computers for which authorization is required and has been given, and (3) computers for which authorization is required but has not been given." *Id.* at 1197–98. Accessing computers in the first category—that are open to the public and do not require authorization—*does not* violate CFAA. *See id.* at 1198 ("With regard to websites made freely accessible on the Internet, . . . the concept of 'without authorization' is inapt"); *id.* at 1196 ("[W]here access is open to the general public, the CFAA 'without authorization'

1  concept is inapplicable."). Public websites, like L'Occitane's, are "available to anyone

2  with an Internet connection, [and] fall into the first category." *Id.* at 1198. Because no

3  permission is required to access those public websites in the first place, permission or

4  authorization cannot be revoked. Therefore, accessing L'Occitane's public website

5  cannot be done "without authorization" in violation of the CFAA.

6       In its opposition, L'Occitane claims CFAA is "akin to the law of trespass" and

7  protective of the "very concept of private property." *See* Opp'n at 8. The Ninth Circuit's

8  *hiQ* opinion exposes L'Occitane's analogy as a fallacy. In examining CFAA's legislative

9  purpose, the *hiQ* Court noted Congress expressly compared CFAA to laws prohibiting

10 "breaking and entering" and that the statute's purpose was to prevent "unlawful intrusion

11 into *otherwise inaccessible* computers." *hiQ*, 31 F.4th at 1196 (emphasis added). A

12 CFAA violation cannot be premised on access to a publicly-available website for which

13 no authorization is required, as L'Occitane attempts to assert here.

14     **C.**   **The *hiQ* Court Expressly Distinguished *Power Ventures* and *Nosal***

15      In disregarding *hiQ*, L'Occitane relies on two earlier cases it contends should

16 govern this case: *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016),

17 and *United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016). L'Occitane asserts these two

18 cases are "directly on point" and "exactly this case." Opp'n at 8, 16, 25–26, 29. However,

19 as *hiQ* explained, both cases materially differ from the present case because the

20 "computer information" at issue was not public and could only be accessed with

21 permission. *See hiQ*, 31 F.4th at 1199 ("*Nosal II* and *Power Ventures* control situations

22 in which authorization generally is required and has either never been given or has been

23 revoked" and "do not control the situation present here, in which information is

24 presumptively open to all comers." (internal quotations omitted)).[3]

25      In *Power Ventures*, the defendant accessed Facebook users' accounts to send mass

26 messages to other Facebook users. *Power Ventures*, 844 F.3d at 1063. Facebook issued

27

28   [3]  The additional cases L'Occitane cites to support its arguments are district court cases that notably
pre-date *hiQ's* ruling. Opp'n at 26–27.

a cease-and-desist letter, but the defendant circumvented IP barriers and continued to log into password-protected Facebook accounts. *Id.* Similarly, in *Nosal*, a former employee used a current employee's login credentials to access company computers and collect confidential information. *Nosal*, 844 F.3d at 1038.[4] Neither case involved access to *public* information, but rather to Facebook accounts behind IP barriers or company computers accessible only with login credentials. *See hiQ*, 31 F.4th at 1199.

Because they differ factually, the *hiQ* Court held that *Power Ventures* and *Nosal* did not control. *Id.* The same is true here.

**D.    The *hiQ* Court Rejected L'Occitane's Statutory Arguments**

L'Occitane raises another argument rejected in *hiQ*, concerning Congress's addition of the word "nonpublic" to 18 U.S.C. § 1030(a)(3). Specifically, L'Occitane claims Congress's decision to add "nonpublic" to § 1030(a)(3) but not to § 1030(a)(2)(C) indicates it intended § 1030(a)(2)(C) to encompass "public" computers. Opp'n at 16–17. The Ninth Circuit rejected L'Occitane's interpretation. It explained that Congress added "nonpublic" to § 1030(a)(2)(C) to "increase protection for government computers" by clarifying that access to public computers may still violate § 1030(a)(3) when used to access non-public computers. *Id.* The Ninth Circuit held that "Congress's concern about protecting government computers, even though some government computers may be 'publicly available,' does not imply that Congress also intended the prohibition of unauthorized access to privately owned protected computers to extend to the publicly available websites on such computers." *Id.* This narrow interpretation of the CFAA is consistent with the rule of lenity. *hiQ*, 31 F.4th at 1200–01; *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021); *see also Salinas v. Cornwell Quality Tools Co.*, No. 5:19-cv-2275, 2022 WL 3130875, at *9 (C.D. Cal. June 10, 2022).

**E.    L'Occitane Failed to Establish the Other Elements of § 1030(a)**

---

[4]    L'Occitane cites to *Nosal's* discussion of "technical barriers", and notes that the Ninth Circuit previously rejected the argument that the defendant must have "circumvent[ed] a technological access barrier." *Nosal*, 844 F.3d at 1038. *hiQ* does not require bypassing a technical barrier; rather, it held that where the plaintiff "generally permits public access to its data," then "accessing that publicly available data will not constitute access without authorization under the CFAA." 31 F.4th at 1201.

L'Occitane also fails to allege that any unauthorized access was used to obtain either private "information" or "anything of value" as required under 18 U.S.C. § 1030(a)(2)(C) and (a)(4).  That is independently fatal to its CFAA claim.

### 1.   *Neither Zimmerman Reed Nor Claimants Obtained Private Information*

L'Occitane must establish that Zimmerman Reed and Claimants used their unauthorized access to obtain "private" information.  *Salinas*, 2022 WL 3130875, at *5 ("[T]he prohibition on unauthorized access applies only to private information.").[5] L'Occitane, however, fails to explain what information Claimants allegedly obtained. *See* Opp'n at 15.  At most, L'Occitane describes that Claimants, by visiting its website, obtained a "claim."  *Id.* A "claim" is not private, it is brought against another party; and moreover, L'Occitane cites no authority that a potential "claim" (the validity of which L'Occitane disputes) constitutes information that can be "obtained" from a website. Furthermore, Claimants did not obtain a claim by visiting L'Occitane publicly-available website; they obtained a claim when L'Occitane impermissibly recorded and collected their information.  L'Occitane's claim under § 1030(a)(2)(C) fails.

### 2.   *L'Occitane Fails to Allege Zimmerman Reed Obtained Something of Value*

A claim under 18 U.S.C. § 1030(a)(4) requires establishing that the unauthorized users obtained "anything of value" via its access to a protected computer.  L'Occitane asserts that Claimants must have obtained something of value (without actually describing what thing of value they obtained) because, otherwise, they would lack contractual consideration required to be bound by L'Occitane's Terms of Use.  Opp'n at

---

[5]   L'Occitane claims "[t]here are likewise no limitations on the type of information – public, private, personal, etc. – that is protected" by the CFAA.  Opp'n at 17.  That is plainly contrary to *hiQ's* holding. *hiQ Labs*, 31 F.4th at 1197 ("[T]he prohibition on unauthorized access is properly understood to apply only to private information").

20.  Of course, L'Occitane avoids admitting to the contradiction in its position: it also argues that there *was no* consideration.  Opp'n to Mot. re Arb. (ECF No. 43) at 27–28.[6]

But consideration for purposes of a contract need not be a "thing of value"; it can be as simple as a promise.  *See Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (holding that a "promise to be bound by the arbitration process itself serves as adequate consideration").  The existence of consideration does not establish Zimmerman Reed and Claimants obtained something of value, and L'Occitane describes no other "thing of value" obtained by visiting its website.[7]  Claimants' right to pursue CIPA claims due to L'Occitane's victimization of them by impermissibly recording their activities likewise confers nothing of value.  Since L'Occitane fails to allege Zimmerman Reed or the clients obtained anything of value, its claim under § 1030(a)(4) fails.

### F.   L'Occitane Fails to Adequately Allege Or Reasonably Support Its Bald (And False) Claim That Zimmerman Reed Engaged In A Conspiracy With Its Clients

L'Occitane's conspiracy claims are based entirely on the assertion that two claimants, Veronica Eshelby and a second unnamed claimant, visited L'Occitane's website after L'Occitane's purported cease-and-desist letter.  *See* Compl. (ECF No. 1), ¶¶ 136-139.  From there, L'Occitane alleges in conclusory fashion, and on unspecified "information and belief," that Zimmerman Reed and the over 3,000 Claimants are engaged in a conspiracy.  This purported conspiracy is the lone basis for asserting a CFAA claim against Zimmerman Reed.  And L'Occitane falls far short of adequately alleging it.

"[C]ourts have required *specific* allegations of an agreement and *common* activities to state a conspiracy claim" under CFAA and rejected conspiracy claims based on "bare statements" of conspiracy.  *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835–

---

[6]  Courts may take judicial notice of its own records, including other filings in the same case.  *See, e.g., Chavez v. Robinson*, 817 F.3d 1162, 1165 n. 1 (9th Cir. 2016).  Under Federal Rule of Evidence 201, Zimmerman Reed asks the Court to take judicial notice of the other filings in this case referenced in this reply and on this Motion.

[7]  The "use" of L'Occitane's website would also not constitute a "thing of value" because the statute exempts claims where the value obtained is the "use of the computer" and the "value of such use is not more than $5,000 . . . ."  18 U.S.C. § 1030(a)(4).

REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS

36 (N.D. Cal. 2014) (emphasis added).[8]  Further, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (internal quotations omitted).  L'Occitane's conspiracy allegations do not meet the required pleading standard for several reasons.

First, L'Occitane's conspiracy claims are built exclusively on "information and belief" and speculation, which cannot satisfactorily allege a conspiracy. *Jensen v. Sweet Home One Care Facility*, No. 00-cv-3261, 2005 WL 873310, at *7 (N.D. Cal. Jan. 31, 2005), aff'd 180 F. App'x 703 (9th Cir. 2006).  In its opposition, L'Occitane merely repeats its same insufficient allegations and speculation.  L'Occitane ignores that most Claimants had notified L'Occitane of their potential CIPA claim *before* any cease-and-desist letter, meaning their website visits could not have been "without authorization" even under L'Occitane's strained interpretation of the CFAA.  *See* Motion (ECF No. 26) at 12.  If Zimmerman Reed's clients visited L'Occitane's website and *then* retained Zimmerman Reed, their website visits could not have violated the cease-and-desist or the CFAA.  That is because the cease-and-desist applied to Zimmerman Reed's current clients, and could not have applied to non-clients.  Compl. (ECF No. 1), ¶ 132.  L'Occitane also acknowledges it cannot determine who accessed its website or when.  *See* Decl. of Mihail Pavlov ("Pavlov Decl.") (ECF No. 43-1) at ¶¶ 4, 7; *see also* fn 7.  Of the few examples of Claimants who visited its website after the cease-and-desist, its own evidence shows those were to shop, not manufacture claims.  Pavlov Decl., ¶¶ 5, 8; *see also* Compl. ¶¶ 136, 139.  L'Occitane, thus, asserts thousands of individuals were involved in a conspiracy with only a few examples involving a handful of Claimants.  That is not a reasonable inference.

---

[8]  *NetApp* also makes clear that "CFAA claims under § 1030(a)(4) [must] be pleaded with specificity only when fraudulent conduct is specifically the basis for the wrongdoing." *Id. at* 834.  Were there any doubt of whether L'Occitane's CFAA claim sounded in fraud, its opposition makes it clear.  *See, e.g.*, Opp'n (ECF No. 42) at 18 (asserting Zimmerman Reed violated CFAA "to set up fraudulent CIPA claims"); *see also id.* at 18, n.7, 19, 21. Rule 9(b), thus, applies.

1    Second, in asking the Court to infer a conspiracy from its speculative allegations,

2    L'Occitane argues that "[n]o one could plausibly believe that 3,144 separate individuals

3    just happened to independently reach out to Zimmerman Reed to pursue . . . CIPA

4    claims." Opp'n at 22. Yet, elsewhere, L'Occitane acknowledged that Zimmerman Reed

5    used advertisements to inform the public that L'Occitane used tracking technologies that

6    may violate the law. Opp'n to Mot. to Seal (ECF No. 20), at 1–2. It is common for

7    consumers to sign up to arbitrate their claims in response to such ads.

8    Third, L'Occitane's allegations of a conspiracy are implausible given Claimants'

9    CIPA claims are based on visits to L'Occitane's website before retaining Zimmerman

10   Reed. Any website visits after Claimants retained Zimmerman Reed could not support

11   their CIPA claims because they would sacrifice an essential element of the claim—lack

12   of consent. L'Occitane's CFAA claim against Zimmerman Reed hinges on its assertion

13   that Zimmerman Reed conspired with its clients to visit L'Occitane's website *after* their

14   retention or *after* the cease-and-desist. But that would upend the stated goal of "setting

15   up" CIPA claims, as directing Claimants to visit the website would undermine those

16   claims. L'Occitane laments that it would have to exhaust funds to combat any allegedly

17   meritless CIPA claim, but that it is a result of its own choice to mandate arbitration. And,

18   that L'Occitane's conspiracy, were it true, would undermine Claimants' CIPA claims

19   further renders its conspiracy implausible. L'Occitane's evidence shows, the post-

20   retention visits to L'Occitane's website were *not* in furtherance of the supposed

21   conspiracy, but to shop. *See, e.g., Buick v. World Savings Bank*, 637 F. Supp.2d 765, 775

22   (E.D. Cal. 2008) (civil conspiracy claim requires acts done in furtherance of the common

23   design).

24   Fourth, L'Occitane's conspiracy allegations warrant extra scrutiny. L'Occitane has

25   cited no case permitting a civil conspiracy claim under CFAA against an attorney based

26   on the attorney's representation of the client. Nor is Zimmerman Reed aware of any such

27   authority. Further, California law requires a party seeking to assert a civil conspiracy

28   claim against an attorney to first obtain court approval upon a showing of reasonable

REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS

probability the claim will prevail. *See* Cal. Civ. Code, 1714.10 (a). While that statute's applicability in federal court is unclear, courts have expressed reluctance to permit conspiracy claims against an attorney absent a duty owed to the third party, such as where "an attorney commits actual fraud in his dealings with third parties." *Wescott v. Daniel*, 2022 WL 1105079, at *4 (N.D. Cal. Apr. 13, 2022) (citation omitted). L'Occitane alleges no such duty or fraud here. Its claim should be dismissed.

## III. L'OCCITANE LACKS STANDING TO BRING ANY OF THE REMAINING CLAIMS AGAINST ZIMMERMAN REED

Despite its unclear pleading, L'Occitane's opposition states it intended to assert its claims challenging the constitutionality of CIPA (*i.e.*, Counts I–III and VI[9]) against every defendant, including Zimmerman Reed.[10] As justification, L'Occitane asserts a novel position that "Zimmerman Reed alone [] is threatening to violate L'Occitane's Constitutional rights."[11] Opp'n at 32. But Zimmerman Reed has no CIPA claim against L'Occitane. Under L'Occitane view, for which it cites no authority, any attorney would be subject to personal countersuit for pursuing their clients' claims.

Claims are brought by parties, not attorneys. Black's Law Dictionary (11th ed. 2019) (defining "plaintiff" as "[t]he party who brings a civil suit in a court of law."). Even where the parties seek attorneys' fees, such fees are awarded, if at all, to the *parties*. *See, e.g.*, *Lanard Toys Ltd. v. Dimple Child LLC*, No. CV 19-616 PA (Ex), 2021 WL 1577784, at *2 (C.D. Cal. Apr. 21, 2021) (Anderson, J.) (awarding attorneys' fees to party); *see also* ECF No. 22-1 ¶¶ 11, 12, 24, 26 (*Claimant* seeking attorneys' fees in arbitration). The CIPA claims belong to Claimants, not Zimmerman Reed, and deeming CIPA unconstitutional provides no remedy as to Zimmerman Reed.

---

[9] "Preemption" (Count VI) is not a cause of action and should be dismissed. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–327 (2015).

[10] In addition to waiving Counts IV and V against Zimmerman Reed, L'Occitane fails to address, and therefore waives, any argument as to its failure to allege any redressable harm suffered by L'Occitane due to the technologies used on Zimmerman Reed's website, which defeats standing for L'Occitane to seek relief regarding such technologies on Zimmerman Reed's website. *See* Compl. at 39, Prayer for Relief ¶ 5.

[11] If Zimmerman Reed "alone" were threatening to violate L'Occitane's constitutional rights, L'Occitane had no reason to name the other 3,144 individuals as Defendants.

1    L'Occitane attempts a linguistic argument that attorneys such as Zimmerman Reed

2    "bring" claims by undertaking the process of "filing" clients' claims with the arbitrator.

3    Opp'n at 31–32.  But, again, Zimmerman Reed makes no claim against L'Occitane.

4    Without any CIPA claim impacted by L'Occitane's constitutional challenges, no present

5    or imminent harm could be redressed by the claims against Zimmerman Reed.

6    While L'Occitane may assert its constitutional challenge as an affirmative defense

7    to *Claimants'* claims in the arbitrations it has ignored thus far, L'Occitane has no basis to

8    name Zimmerman Reed as a defendant in collateral declaratory relief claims, as it has

9    attempted to do here.  A party seeking declaratory relief must show "(1) an 'injury in fact

10    that is concrete and particularized and 'actual or imminent, not conjectural or

11    hypothetical' that is (2) 'causal[ly] connect[ed]' and 'fairly traceable' to 'the conduct

12    complained of' and 'not the result of the independent action of some third party not before

13    the court' and (3) 'likely as opposed to merely speculative, such that the injury will be

14    redressed by a favorable decision.'"  *San Diego County Credit Union v. Citizens Equity*

15    *First Credit Union*, 65 F.4th 1012, 1022-1023 (9th Cir. 2023), *citing Lujan v. Defs. Of*

16    *Wildlife*, 504 U.S. 555, 560-561 (1992).  If L'Occitane's approach were valid, any

17    defendant could sue opposing counsel by asserting the claims in the underlying case

18    violate the constitution or are preempted, as a pretext for collateral litigation.

19    L'Occitane suggests Zimmerman Reed might continue to pursue CIPA claims even

20    after CIPA is deemed unconstitutional.  This claim is without basis, and such a situation

21    is not before the Court.  A speculative threat of future harm does not afford standing for

22    the injunctive relief L'Occitane seeks.  *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

23    L'Occitane has no standing or basis to assert its declaratory relief claims (Counts

24    I-III and VI) against L'Occitane, and they should be dismissed.

25    **IV.    CONCLUSION**

26    The Court should dismiss the CFAA claim in its entirety, and all other claims

27    brought against Zimmerman Reed.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: April 1, 2024

KELLER/ANDERLE LLP

By:     */s/ Chase A. Scolnick*

JENNIFER L. KELLER (SBN 84412)
jkeller@kelleranderle.com
CHASE A. SCOLNICK (SBN 227631)
cscolnick@kelleranderle.com
JAY P. BARRON (SBN 245654)
jbarron@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
(949) 476-8700 Telephone
(949) 476-0900 Facsimile

CALEB MARKER (SBN 269721)
caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Defendant Zimmerman Reed LLP*

REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Zimmerman Reed LLP, certifies that this brief complies with the 12 page limit set by Paragraph 6(b) of the Court's Standing Order (ECF No. 13).


Dated: April 1, 2024                    */s/ Chase A. Scolnick*
                                        Chase A. Scolnick

REPLY IN SUPPORT OF DEFENDANT ZIMMERMAN REED LLP'S MOTION TO DISMISS