## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 24-1103 PA (RAOx) | Date | April 2, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**        IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Compel Arbitration (Docket No. 21) filed on behalf of 3,144 clients of the law firm of defendant Zimmerman Reed LLP ("Zimmerman Reed"). The 3,144 clients ("Claimants"), who are individually named as defendants in this action, seek to enforce an arbitration provision contained in the "terms and conditions" section of the website operated by plaintiff L'Occitane, Inc. ("L'Occitane" or "Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for April 15, 2024, is vacated, and the matter taken off calendar.

The terms and conditions of L'Occitane's website provide:

> The following terms and conditions ("Terms of Use") govern your use of our Websites and apply when you purchase products on our Websites and in Stores, including gift cards and e-gift cards ("Merchandise"), from L'Occitane. Your continued use of the Websites constitutes your agreement to follow and be bound by the Terms of Use ("Agreement").[1] By placing an order for Merchandise through loccitane.com/en-us or any L'Occitane-owned or affiliated Internet sites or Stores, including but not limited to usa.Erborian.com and usa.lecouventdesminimes.com, mobile sites, or mobile applications (collectively our "Websites"), accessed via a user's computer, mobile, e-reader, tablet or other device ("Device") used to access the online services, and applications and websites affiliated

---

[1]        L'Occitane's Complaint rather disingenuously omits both "govern your use of our Websites" and "Your continued use of the Websites constitutes your agreement to follow and be bound by the Terms of Use" from its quotation of the terms and conditions. See Compl. ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 2, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

with L'Occitane goods and services ( Collectively, the "Online Services") or by phone, you accept these Terms of Use and agree to be bound by them. The Websites and stores are provided as a service to our customers.

PLEASE BE INFORMED THAT THIS AGREEMENT CONTAINS AN ARBITRATION REQUIREMENT AND WAIVER OF RIGHT TO BRING CLASS ACTIONS (see below).

YOUR USE OF THE WEBSITE CONSTITUTES YOUR AGREEMENT TO FOLLOW AND BE BOUND BY THE AGREEMENT. WE RESERVE THE RIGHT TO UPDATE OR MODIFY THIS AGREEMENT AT ANY TIME WITHOUT PRIOR NOTICE. FOR THIS REASON, WE ENCOURAGE YOU TO REVIEW THE AGREEMENT WHENEVER YOU USE THE WEBSITE. IF YOU DO NOT AGREE TO THESE TERMS, PLEASE DO NOT USE THE SITES.

The terms and conditions include a dispute resolution provision that applies "[i]n the event of any controversy, claim, action or dispute arising out of or related to any transaction conducted on the Websites, or the breach, enforcement, interpretation, or validity of this Agreement or any part of it ('Dispute')." A claimant with a "Dispute" must first attempt to informally resolve the "Dispute" with L'Occitane before triggering a mandatory arbitration provision that includes a clause reserving to the arbitrator issues relating to arbitrability.

Zimmerman Reed seeks to trigger L'Occitane's dispute resolution procedure on behalf of thousands of the law firm's clients alleging violations of the California Invasion of Privacy Act ("CIPA") because analytics "cookies" on the website track user activity in a manner that Zimmerman Reed believes constitutes prohibited wiretapping activity under CIPA. Zimmerman Reed has initiated approximately 100 arbitrations with the American Arbitration Association ("AAA"). Zimmerman Reed has invoiced L'Occitane $12,625 for the arbitration filing fees it has advanced and AAA has sought $32,825 in arbitration initiation fees from L'Occitane for those arbitrations. Zimmerman Reed seeks to initiate individual arbitrations on behalf of 3,144 of its clients. Based on the arbitration fees incurred on behalf of approximately 100 claimants, L'Occitane faces well over $1 million in arbitration fees just to initiate the 3,144 arbitrations Zimmerman Reed seeks to pursue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 2, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

      Rather than succumb to what it considers an extortionate demand to arbitrate meritless claims that L'Occitane believes are not subject to the website's terms and conditions or arbitration provision because the vast majority of Zimmerman Reed's clients never purchased products or were involved in a "transaction conducted" on the website, L'Occitane initiated this action asserting claims against Zimmerman Reed and the 3,144 individual claimants represented by Zimmerman Reed.  Specifically, L'Occitane's Complaint seeks to invalidate CIPA's provisions, California Penal Code sections 631 and 632.7, as unconstitutional in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution, asserts that CIPA is preempted by the Communications Decency Act, 47 U.S.C. § 230, that Zimmerman Reed and its clients have violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and seeks declaratory relief.

      In seeking to enforce the arbitration clause contained in the website's terms and conditions, Claimants assert that it applies not just to those who purchase goods from the website, but also to those who merely visit and "use" the website, and that, accordingly, the website's users who do not purchase goods can compel arbitration.  L'Occitane contends, among other grounds to deny Claimants' efforts to compel arbitration, that the arbitration clause only applies to disputes "arising out of or related to any transaction conducted on the Websites."  According to L'Occitane, because a visitor to the website who does not make a purchase cannot have a dispute "related to any transaction" because there is no "transaction."  The parties then dispute how the terms and conditions' use of "transaction" should be interpreted.[2]

      Although the arbitration provision provides that it "shall be governed by, and interpreted, construed, and enforced in accordance with, the Federal Arbitration Act," the parties do not, except in the most conclusory manner, brief whether the Federal Arbitration Act ("FAA") can apply to a dispute brought by one who merely visits a website but makes no purchase.  The FAA provides:

> A written provision in any maritime transaction or <u>a contract evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement

---

[2] This dispute might be irrelevant if one who merely visits the website but makes no purchase is still disputing the "breach, enforcement, interpretation, or validity" of the arbitration clause, since the arbitration clause applies to "any controversy, claim, action or dispute arising out of or related to any transaction conducted on the Websites, <u>or the breach, enforcement, interpretation, or validity</u>" of the arbitration clause.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 2, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

     in writing to submit to arbitration an existing controversy arising out
of such a contract, transaction, or refusal, shall be valid, irrevocable,
and enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract . . . .

9 U.S.C. § 2 (emphasis added).  The FAA appears to require the existence of a "contract evidencing a transaction involving commerce" to come within the scope of the FAA.  That is, even under Claimants' theory that the terms and conditions apply to those who merely visit the website, as opposed to purchase a product from it, that would not necessarily establish that the terms and conditions as they might apply to a website visitor are a "contract evidencing a transaction" for purposes of the FAA.  Indeed, even if, as a matter of contract interpretation, "transaction" in the terms and conditions could be interpreted to include and alternative dictionary definition advocated by Claimants of "a communicative action or activity involving two parties or things that reciprocally affect or influence each other," that does not mean that "transaction" has that meaning as a matter of statutory interpretation under the FAA.

     The Court provides the parties with an opportunity to file Supplemental Briefs to address whether the terms and conditions that may apply to one who merely visits a website is a "contract evidencing a transaction" for purposes of the FAA and if the Court may, under the FAA, enforce an arbitration clause contained within a website's terms and conditions for one who merely visits a website but makes no purchase.  The Supplemental Briefs, which shall not exceed 7 pages, shall be filed by no later than April 10, 2024.  After that date, the matter will be deemed under submission.  The Court will notify the parties once the Court has resolved the Motion or the date and time of a hearing should the Court conclude that oral argument will assist the Court's resolution of the Motion.

     IT IS SO ORDERED.