UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**     IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Compel Arbitration (Docket No. 21) filed on behalf of 3,144 alleged clients ("Claimants")[1/] of the law firm of defendant Zimmerman Reed LLP ("Zimmerman Reed"). Claimants, who are individually named as defendants in this action, seek to enforce an arbitration provision contained in the "terms and conditions" section of the website operated by plaintiff L'Occitane, Inc. ("L'Occitane" or "Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for April 15, 2024, is vacated, and the matter taken off calendar.

I.     **Factual and Procedural Background**

L'Occitane commenced this action against Zimmerman Reed and Claimants arising out of what L'Occitane views as a scheme by Zimmerman Reed to extract a costly settlement from L'Occitane for L'Occitane's use of analytics "cookies" on its website by exploiting an arbitration provision contained in the terms and conditions found on the website operated by L'Occitane. The terms and conditions of L'Occitane's website provide:

> The following terms and conditions ("Terms of Use") govern your use of our Websites and apply when you purchase products on our Websites and in Stores, including gift cards and e-gift cards

---

[1/]     In L'Occitane's Supplemental Brief filed in conjunction with the Motion to Compel Arbitration, L'Occitane states that it has begun mailing Waivers of Service to Claimants and that some of the Claimants have told L'Occitane that they are not clients of Zimmerman Reed, have not initiated or authorized a claim, or, in at least one case, ever visited L'Occitane's website. This potential dispute has no bearing on the Court's resolution of the pending Motion to Compel Arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

> ("Merchandise"), from L'Occitane. Your continued use of the Websites constitutes your agreement to follow and be bound by the Terms of Use ("Agreement").[2] By placing an order for Merchandise through loccitane.com/en-us or any L'Occitane-owned or affiliated Internet sites or Stores, including but not limited to usa.Erborian.com and usa.lecouventdesminimes.com, mobile sites, or mobile applications (collectively our "Websites"), accessed via a user's computer, mobile, e-reader, tablet or other device ("Device") used to access the online services, and applications and websites affiliated with L'Occitane goods and services ( Collectively, the "Online Services") or by phone, you accept these Terms of Use and agree to be bound by them. The Websites and stores are provided as a service to our customers.
>
> PLEASE BE INFORMED THAT THIS AGREEMENT CONTAINS AN ARBITRATION REQUIREMENT AND WAIVER OF RIGHT TO BRING CLASS ACTIONS (see below).
>
> YOUR USE OF THE WEBSITE CONSTITUTES YOUR AGREEMENT TO FOLLOW AND BE BOUND BY THE AGREEMENT. WE RESERVE THE RIGHT TO UPDATE OR MODIFY THIS AGREEMENT AT ANY TIME WITHOUT PRIOR NOTICE. FOR THIS REASON, WE ENCOURAGE YOU TO REVIEW THE AGREEMENT WHENEVER YOU USE THE WEBSITE. IF YOU DO NOT AGREE TO THESE TERMS, PLEASE DO NOT USE THE SITES.

The terms and conditions include a dispute resolution provision that applies "[i]n the event of any controversy, claim, action or dispute arising out of or related to any transaction conducted on the Websites, or the breach, enforcement, interpretation, or validity of this Agreement or any part of it ('Dispute')." A claimant with a "Dispute" must first attempt to informally resolve the "Dispute" with L'Occitane before triggering a mandatory arbitration provision that includes a clause reserving to the arbitrator issues relating to arbitrability.

---

[2]   L'Occitane's Complaint rather disingenuously omits both "govern your use of our Websites" and "Your continued use of the Websites constitutes your agreement to follow and be bound by the Terms of Use" from its quotation of the terms and conditions. (<u>See</u> Compl. ¶ 22.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

    Zimmerman Reed seeks to trigger L'Occitane's dispute resolution procedure on behalf of thousands of the law firm's clients alleging violations of the California Invasion of Privacy Act ("CIPA") because the analytics cookies on the website track user activity in a manner that Zimmerman Reed believes constitutes prohibited wiretapping activity under CIPA. Zimmerman Reed has initiated approximately 100 arbitrations with the American Arbitration Association ("AAA"). Zimmerman Reed has invoiced L'Occitane $12,625 for the arbitration filing fees it has advanced and AAA has sought $32,825 in arbitration initiation fees from L'Occitane for those arbitrations. Zimmerman Reed seeks to initiate individual arbitrations on behalf of 3,144 of its clients. Based on the arbitration fees incurred on behalf of approximately 100 claimants, L'Occitane faces well over $1 million in arbitration fees just to initiate the 3,144 arbitrations Zimmerman Reed seeks to pursue.

    Rather than succumb to what it considers an extortionate demand to arbitrate meritless claims that L'Occitane believes are not subject to the website's terms and conditions or arbitration provision because the vast majority of Zimmerman Reed's clients never purchased products and were not involved in a "transaction conducted" on the website, L'Occitane initiated this action asserting claims against Zimmerman Reed and the 3,144 individual claimants represented by Zimmerman Reed. Specifically, L'Occitane's Complaint asserts claims for: (1) declaratory relief that CIPA violates the First Amendment as an unlawful content restriction on speech; (2) declaratory relief that CIPA violates the First Amendment as an unlawful time, place, and manner restriction; (3) declaratory relief that CIPA is void for vagueness under the Fifth and Fourteenth Amendments; (4) declaratory relief that the Claimants did not enter an agreement with L'Occitane; (5) declaratory relief that if the Claimants entered agreements with L'Occitane that they have not satisfied the informal dispute resolution process contained in the terms and conditions; (6) declaratory relief that Defendants' actions and efforts to hold L'Occitane liable under CIPA are preempted by the Communications Decency Act; and (7) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

**II.     Legal Standard**

    The arbitration agreement provides that it "shall be governed by, and interpreted, construed, and enforced in accordance with, the Federal Arbitration Act." The Federal Arbitration Act ("FAA") provides:

> A written provision in any maritime transaction or <u>a contract evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

> of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2 (emphasis added). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (emphasis in original). Under the FAA, a court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both courts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (internal citations omitted).

In resolving Motions to Compel Arbirtration, the Ninth Circuit has instructed district courts:

> First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

Caremark, LLC v. Chickasaw Nation, 43 F.4th 1021, 1030 (9th Cir. 2022). Where a party "contests the existence, not the scope, of an arbitration agreement that would encompass [the] dispute," it is the "party seeking to compel arbitration . . . [that] bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Johnson v. Walmart, Inc., 57 F.4th 677, 681 (9th Cir. 2023).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

### III.  Analysis

Zimmerman Reed's clients have voluntarily appeared in this action for what they characterize as the "limited purpose" of seeking to compel arbitration.[3/]  Claimants contend that they have voluntarily consented to the terms and conditions on L'Occitane's website and wish to arbitrate their CIPA claims in arbitration.  In its Opposition to Claimants' Motion, L'Occitane asserts, among other grounds, that Claimants failed to meet their evidentiary burden to establish that Claimants and L'Occitane entered into any contract because Claimants' Motion is not supported by any declarations from Claimants or other admissible evidence that they made purchases on L'Occitane's website or even visited the website at all.  In their Reply, Claimants argue that L'Occitane's Complaint constitutes a judicial admission that each Claimant visited the website.  Although the Complaint alleges that L'Occitane's records indicate that a small number of Claimants made purchases from the website, Claimants have not identified those Claimants, provided any evidence of Claimants who made purchases, or moved to compel arbitration on behalf of those who made purchases.  Instead, Claimants seek to compel arbitration based on their theory that the website's terms and conditions apply to all visitors to the website and that website visitors may enforce the arbitration provision within the terms and conditions without having made a purchase or providing admissible evidence that they visited the website.

After receiving the parties' briefing in support of and in opposition to the Motion to Compel Arbitration, the Court provided the parties with an opportunity to file Supplemental Briefs to address whether the terms and conditions that may apply to one who merely visits a website qualify as a "contract evidencing a transaction" for purposes of the FAA and if the Court may, under the FAA, enforce an arbitration clause contained within a website's terms and conditions for one who merely visits a website but makes no purchase.  The parties have submitted the Supplemental Briefs and the Court has reviewed them.

Because Claimants have sought to compel arbitration based only on their theory that visiting the website is sufficient to come within the scope of the terms and conditions and trigger the arbitration agreement, the Court concludes that even accepting Claimants' dubious position that interacting with a website qualifies as a "transaction" for purposes of the FAA, the terms and conditions do not "evidence" that transaction.  That is, in such circumstances, though the

---

[3/]     Although L'Occitane contends that Claimants' filing of the Motion to Compel Arbitration constitutes a general appearance and that Claimants have therefore waived service, that issue is not squarely presented in either the Motion to Compel Arbitration or in the Motion to Dismiss filed only on behalf of Zimmerman Reed.  Nor is the status of service of the Summons and Complaint on Claimants necessary to resolve this Motion to Compel Arbitration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

terms and conditions might be a "contract," and neither party disputes that the website effects "commerce," the terms and conditions do not memorialize or in any other way confirm that a transaction occurred. Therefore, the terms and conditions, even if they apply to a website visitor, are not a "contract evidencing a transaction in commerce" and the arbitration agreement here, under the theory advanced by Claimants, does not fall within the scope of the FAA. Because Claimants have only sought to compel arbitration under the FAA, and the FAA does not apply in the absence of a "contract evidencing a transaction in commerce," Claimants Motion to Compel Arbitration fails.[4]

Additionally, because Claimants have only argued in support of their Motion to Compel Arbitration that a website visitor who makes no purchase nevertheless falls within the website's terms and conditions and may compel arbitration, the Court concludes that the Complaint's allegations are insufficient to satisfy Claimants' evidentiary burden to establish by a preponderance of the evidence that L'Occitane had an agreement to arbitrate with each Claimant. The Complaint, for instance, describe's the action as an effort "to stop the Defendants from manufacturing arbitration claims en masse by simply visiting L'Occitane's website (if at all), and then claiming their 'privacy' was violated . . . ." (Compl. ¶ 1 (emphasis added).) This is not a judicial admission by L'Occitane that each Claimant visited the website. Therefore, even accepting Claimants' argument for purposes of this Motion that the terms and conditions apply to website visitors and that visitors could trigger the arbitration provision without engaging in a transaction by making a purchase, Claimants have not adequately established by a preponderance of the evidence that they visited the website.[5] By failing to establish that they visited the website, Claimants have, even under their own theory, failed to meet their burden to establish an agreement to arbitrate between L'Occitane and any of the 3,144 Claimants, let alone all of them. See Johnson, 57 F.4th at 681. The preponderance of the evidence does not support

---

[4] The Court may have reached a different result had Claimants sought to compel arbitration on behalf of the small number of Claimants who apparently made purchases, if Claimants had identified those individuals and provided sufficient evidence of an agreement to arbitrate. But Claimants did not make this argument to fall within the scope of the FAA.

[5] Because Claimants did not identify the small group of Claimants that L'Occitane admits made a purchase, submit evidence of those purchases, or make any argument that this smaller group was seeking to compel arbitration on any ground other than having visited the website, Claimants have waived any argument that those in this smaller group of purchasers may compel arbitration based on those purchases falling within the terms and conditions and triggering the arbitration agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

a conclusion that there an agreement to arbitrate exists between L'Occitane and Claimants. This, on its own, is also a sufficient basis upon which to deny the Motion to Compel Arbitration.

## Conclusion

      For all of the foregoing reasons, the Court denies Claimants' Motion to Compel Arbitration.

      IT IS SO ORDERED.