UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**    IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss (Docket No. 26) filed by defendant Zimmerman Reed LLP ("Zimmerman Reed"). Zimmerman Reed challenges the sufficiency of the claims asserted against it in the Complaint filed by plaintiff L'Occitane, Inc. ("L'Occitane" or "Plaintiff"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for April 15, 2024, is vacated, and the matter taken off calendar.

## I.      Factual and Procedural Background

L'Occitane commenced this action against Zimmerman Reed and 3,144 of the law firm's alleged clients ("Claimants")[1] arising out of what L'Occitane views as a scheme by Zimmerman Reed to extract a costly settlement from L'Occitane for L'Occitane's use of analytics "cookies" on its website by exploiting an arbitration provision contained in the terms and conditions found on the website operated by L'Occitane. The terms and conditions of L'Occitane's website provide:

> The following terms and conditions ("Terms of Use") govern your use of our Websites and apply when you purchase products on our Websites and in Stores, including gift cards and e-gift cards ("Merchandise"), from L'Occitane. Your continued use of the

---

[1]      In L'Occitane's Supplemental Brief filed in conjunction with the Motion to Compel Arbitration, L'Occitane states that it has begun mailing Waivers of Service to Claimants and that some of the Claimants have told L'Occitane that they are not clients of Zimmerman Reed, have not initiated or authorized a claim, or, in at least one case, ever visited L'Occitane's website. This potential dispute has no bearing on the Court's resolution of the pending Motion to Dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

> Websites constitutes your agreement to follow and be bound by the Terms of Use ("Agreement").[2/] By placing an order for Merchandise through loccitane.com/en-us or any L'Occitane-owned or affiliated Internet sites or Stores, including but not limited to usa.Erborian.com and usa.lecouventdesminimes.com, mobile sites, or mobile applications (collectively our "Websites"), accessed via a user's computer, mobile, e-reader, tablet or other device ("Device") used to access the online services, and applications and websites affiliated with L'Occitane goods and services ( Collectively, the "Online Services") or by phone, you accept these Terms of Use and agree to be bound by them.  The Websites and stores are provided as a service to our customers.
>
> PLEASE BE INFORMED THAT THIS AGREEMENT CONTAINS AN ARBITRATION REQUIREMENT AND WAIVER OF RIGHT TO BRING CLASS ACTIONS (see below).
>
> YOUR USE OF THE WEBSITE CONSTITUTES YOUR AGREEMENT TO FOLLOW AND BE BOUND BY THE AGREEMENT.  WE RESERVE THE RIGHT TO UPDATE OR MODIFY THIS AGREEMENT AT ANY TIME WITHOUT PRIOR NOTICE. FOR THIS REASON, WE ENCOURAGE YOU TO REVIEW THE AGREEMENT WHENEVER YOU USE THE WEBSITE.  IF YOU DO NOT AGREE TO THESE TERMS, PLEASE DO NOT USE THE SITES.

The terms and conditions include a dispute resolution provision that applies "[i]n the event of any controversy, claim, action or dispute arising out of or related to any transaction conducted on the Websites, or the breach, enforcement, interpretation, or validity of this Agreement or any part of it ('Dispute')."  A claimant with a "Dispute" must first attempt to informally resolve the "Dispute" with L'Occitane before triggering a mandatory arbitration provision that includes a clause reserving to the arbitrator issues relating to arbitrability.

---

[2/]    L'Occitane's Complaint rather disingenuously omits both "govern your use of our Websites" and "Your continued use of the Websites constitutes your agreement to follow and be bound by the Terms of Use" from its quotation of the terms and conditions.  (See Compl. ¶ 22.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

    Zimmerman Reed seeks to trigger L'Occitane's dispute resolution procedure on behalf of thousands of the law firm's clients alleging violations of the California Invasion of Privacy Act ("CIPA") because the analytics cookies on the website track user activity in a manner that Zimmerman Reed believes constitutes prohibited wiretapping activity under CIPA.  Zimmerman Reed has initiated approximately 100 arbitrations with the American Arbitration Association ("AAA").  Zimmerman Reed has invoiced L'Occitane $12,625 for the arbitration filing fees it has advanced and AAA has sought $32,825 in arbitration initiation fees from L'Occitane for those arbitrations.  Zimmerman Reed seeks to initiate individual arbitrations on behalf of 3,144 of its clients.  Based on the arbitration fees incurred on behalf of approximately 100 claimants, L'Occitane faces well over $1 million in arbitration fees just to initiate the 3,144 arbitrations Zimmerman Reed seeks to pursue.

    Rather than succumb to what it considers an extortionate demand to arbitrate meritless claims that L'Occitane believes are not subject to the website's terms and conditions or arbitration provision because the vast majority of Zimmerman Reed's clients never purchased products and were not involved in a "transaction conducted" on the website, L'Occitane initiated this action asserting claims against Zimmerman Reed and the 3,144 individual claimants represented by Zimmerman Reed.  Specifically, L'Occitane's Complaint asserts claims for: (1) declaratory relief that CIPA violates the First Amendment as an unlawful content restriction on speech; (2) declaratory relief that CIPA violates the First Amendment as an unlawful time, place, and manner restriction; (3) declaratory relief that CIPA is void for vagueness under the Fifth and Fourteenth Amendments; (4) declaratory relief that the Claimants did not enter an agreement with L'Occitane; (5) declaratory relief that if the Claimants entered agreements with L'Occitane that they have not satisfied the informal dispute resolution process contained in the terms and conditions; (6) declaratory relief that Defendants' actions and efforts to hold L'Occitane liable under CIPA are preempted by the Communications Decency Act; and (7) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

    Zimmerman Reed's clients have voluntarily appeared in this action for what they characterize as the "limited purpose" of seeking to compel arbitration.[3/]  The Court has denied Claimants' Motion to Compel Arbitration in a separate order.  In this Motion to Dismiss, brought only on behalf of Zimmerman Reed, Zimmerman Reed seeks dismissal of the Computer Fraud

---

[3/]    Although L'Occitane contends that Claimants' filing of the Motion to Compel Arbitration constitutes a general appearance and that Claimants have therefore waived service, that issue is not squarely presented in either the Motion to Compel Arbitration or in this Motion to Dismiss filed only on behalf of Zimmerman Reed.  Nor is the status service of the Summons and Complaint on Claimants necessary to resolve this Motion to Dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

and Abuse Act claim alleged in L'Occitane's Complaint because, among other grounds, the CFAA does not apply to visitors of public websites. Zimmerman Reed also seeks to dismiss the declaratory relief claims asserted against it, which L'Occitane clarifies are the first, second, third, and sixth claims, on the grounds that L'Occitane lacks standing to pursue those claims against Zimmerman Reed.

## II.     Legal Standard

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

### III.    Analysis

According to the Complaint, the dispute between the parties "arose when Zimmerman Reed sent L'Occitane a letter dated September 6, 2023," in which Zimmerman Reed notified L'Occitane that 2,250 of the law firm's clients had claims arising out of L'Occitane's website's use of analytics cookies and wished to initiate discussions under the informal dispute resolution provisions of the website's terms and conditions.  (Compl. ¶ 25.)  On October 6, 2023, L'Occitane wrote to Zimmerman Reed disputing the validity of the privacy claims presented by the Claimants and "instructed Zimmerman Reed and its clients (among others) that they were no longer authorized to access" L'Occitane's website.  (Id. ¶ 29.)  Zimmerman Reed later sent a letter adding additional Claimants letter to L'Occitane and identifying the 3,144 individual Claimants that are named defendants in this action as having visited L'Occitane's website.  (Id. ¶ 31.)  L'Occitane alleges that "numerous . . . Defendants accessed L'Occitane's website and obtained information for L'Occitane's protected computer after being expressly informed through Zimmerman Reed that they were not authorized to do so."  (Id. ¶ 139.)  According to L'Occitane, it "is being threatened with mass arbitration by Defendants" pursuing CIPA claims.  (Id. ¶ 44.)

####     A.    Computer Fraud and Abuse Act

Based on its October 6, 2023 letter stating that Zimmerman Reed and its clients were no longer authorized to visit L'Occitane's website, L'Occitane alleges that Zimmerman Reed and the 3,144 Claimants violated the Computer Fraud and Abuse Act by visiting the website without authorization.  In addition to criminal liability, the CFAA allows one who "suffers damage or loss" to bring a civil action against "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).  According to the Ninth Circuit, "the phrase 'without authorization' is a non-technical term that, given its plain and ordinary meaning, means accessing a protected computer without permission." hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180, 1195 (9th Cir. 2022) (quoting United States v. Nosal ("Nosal II"), 844 F.3d 1024, 1028 (9th Cir. 2016).  As the Ninth Circuit has explained, Nosal II "involved an employee accessing without permission an employer's private computer for which access permissions in the form of user accounts were required." Id.  In other circumstances, the Ninth Circuit has concluded that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

"a violation of the terms of use of a website—without more—cannot establish liability under the CFAA." Facebook, Inc. v. Power Ventures, Inc. ("Power Ventures"), 844 F.3d 1058, 1067 (9th Cir. 2016).

In hiQ Labs, the Ninth Circuit concluded that "the CFAA contemplates the existence of three kinds of computer systems: (1) computers for which access is open to the general public is not required, (2) computers for which authorization is required and has been given, and (3) computers for which authorization is required but has not been given (or, in the case of the prohibition on exceeding authorized access, has not been given for the part of the system accessed)." hiQ Labs, 31 F.4th at 1197-98. Information on public websites, like the one operated by L'Occitane, "available to anyone with an Internet connection, fall into the first category. With regard to websites made freely accessible on the Internet, the 'breaking and entering analogue invoked so frequently during congressional consideration has no application, and the concept of 'without authorization' is inapt." Id. at 1198.

Although L'Occitane relies primarily on Nosal II and Power Ventures to support its contention that Zimmerman Reed and its clients conspired to visit and visited the website "without authorization" after L'Occitane communicated to Zimmerman Reed that it and its clients were no longer authorized to visit the public website, the Ninth Circuit explained in hiQ Labs that "Nosal II and Power Ventures control situations in which authorization generally is required and has either never been given or has been revoked. As Power Ventures indicated, the two cases do not control the situation present here, in which information is 'presumptively open to all comers.'" Id. at 1199 (citing Power Ventures, 844 F.3d at 1067 n.2). Instead, although hiQ Labs involved a challenge to the issuance of a preliminary injunction, the Court concludes that the Ninth Circuit's analysis of the CFAA in hiQ Labs applies to L'Occitane's claim where a public website's operator selectively revokes authorization but imposes no technological barriers to an unwanted visitor. In such instances, "[w]here the default is free access without authorization, in ordinary parlance one would characterize selective denial of access as a ban, not as a lack of 'authorization.'" 31 F.4th at 1196; see also id. at 1201 ("the CFAA's prohibition on accessing a computer 'without authorization' is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer. It is likely that when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA.").

The Court therefore concludes that L'Occitane's Complaint fails to state a viable CFAA claim against Zimmerman Reed. Because L'Occitane's CFAA claim is premised on its revoking permission for Zimmerman Reed and its clients to visit L'Occitane's public website, the Court concludes that no amendment could cure the CFAA claim's infirmities. Nor has L'Occitane

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

requested leave to amend. The Court therefore concludes that leave to amend to state a CFAA claim against Zimmerman Reed would be futile and dismisses the CFAA claim asserted against it without leave to amend.

**B.      L'Occitane's Standing to Pursue Declaratory Relief**

Zimmerman Reed challenges L'Occitane's standing to pursue the Complaints first, second, third, and seventh claims for declaratory relief because only Zimmerman Reed's clients, and not Zimmerman Reed, have sought to initiate claims under the terms and conditions of L'Occitane's website. According to Zimmerman Reed, because it has made no claims against L'Occitane, L'Occitane has failed to allege any facts showing that it has been injured by Zimmerman Reed, and therefore L'Occitane lacks standing to pursue the declaratory relief claims against Zimmerman Reed.

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case . . . ." Burke v. Barnes, 479 U.S. 361, 363, 107 S. Ct. 736, 93 L. Ed. 2d 732 (1987). A case arises within the meaning of the Constitution if it involves "[a] declaration on rights as they stand . . . , not on rights which may arise in the future . . . , [and] an actual controversy over an issue, not a desire for an abstract declaration of the law." In re Summers, 325 U.S. 561, 566–67, 89 L. Ed. 1795, 65 S. Ct. 1307 (1945). "Standing is a jurisdictional issue deriving from the 'case or controversy' requirement of Article III of the United States Constitution." Native Vill. of Kivalina v. ExxonMobil Corp., 696 F.3d 849, 867 (9th Cir. 2012) (citing Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir. 2000)). The party invoking federal jurisdiction bears the burden to establish Article III standing. Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

The Supreme Court has held that to have Article III standing under the Constitution, a party must show it has suffered an "injury in fact," that there is a "causal connection between the injury" and the defendant's complained-of conduct, and that it is likely "that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61, 112 S. Ct. at 2136-37, 119 L. Ed. 2d 351. Importantly, the requirements for Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [so] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351.

To demonstrate an "injury in fact," a plaintiff must establish an "invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

"conjectural" or 'hypothetical.'" Id. at 560, 112 S. Ct. at 2136, 119 L. Ed. 2d 351 (citations omitted). To meet this test, the "line of causation" between the alleged conduct and injury must not be "too attenuated," and "the prospect of obtaining relief from the injury" must not be "too speculative." Allen v. Wright, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325, 82 L. Ed. 2d 556 (1984); see also Maya v. Centex Corp., 658 F.3d 1060, 1069-70 (9th Cir. 2011).

Here, L'Occitane alleges that it has standing to pursue its claims for declaratory relief against both Zimmerman Reed and Claimants because it "is being threatened with mass arbitration by Defendants" pursuing CIPA claims. (Complaint ¶ 44.) Now that the Court has denied Claimants' Motion to Compel Arbitration, that threat has evaporated. It therefore appears, at this stage of the proceedings, that whatever injury may have supported L'Occitane's standing to pursue its declaratory relief claims no longer exists. Additionally, it appears that any declaration L'Occitane could now obtain concerning whether CIPA violates the Constitution or is preempted, and whether Claimants entered arbitration agreements or exhausted the informal dispute resolution process described in L'Occitane's website's terms and conditions would amount to an impermissible advisory opinion. As the Ninth Circuit has explained: "[w]hen presented with a claim for a declaratory judgment, [] federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (citation omitted); see also Coal. for a Healthy Cal. v. F.C.C., 87 F.3d 383, 386 (9th Cir. 1996) (noting that "federal courts have never been empowered to issue advisory opinions")). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." Rhoades, 504 F.3d at 1157.

## Conclusion

For all of the foregoing reasons, the Court grants Zimmerman Reed's Motion to Dismiss the CFAA claim asserted against it in L'Occitane's Complaint. Because the Court's reasoning on that claim appears to also apply to L'Occitane's CFAA claim against Claimants, the Court orders the parties to show cause in writing why the Court should not also dismiss the CFAA claim against Claimants. Additionally, in light of the Court's separate order in which it denied Claimants' Motion to Compel Arbitration, and to avoid the Court's unnecessary resolution of issues that may no longer present a live case or controversy, for which L'Occitane appears to lack standing, and would amount to an advisory opinion, the Court orders the parties to show cause in writing why the claims for declaratory relief against both Zimmerman Reed and Claimants should not be dismissed without prejudice for lack of standing, the absence of a live case or controversy, because the declarations L'Occitane seeks would be impermissible advisory opinions, or why the Court should not otherwise exercise its discretion by declining to entertain the claims for declaratory relief. Finally, the Court orders the parties to show cause in writing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-1103 PA (RAOx) | Date | April 12, 2024 |
|---|---|---|---|
| Title | L'Occitane, Inc. v. Zimmerman Reed LLP, et al. | | |

why, if the Court concludes that the CFAA claim should be dismissed against both Zimmerman Reed and Claimants, why the Court should not decline to exercise supplemental jurisdiction over the remaining claims for declaratory relief pursuant to 28 U.S.C. § 1367(c)(3).[4/]  The parties' responses to these Orders to Show Cause, which shall not exceed 10 pages, shall be filed by no later than April 22, 2024.  The failure to timely or adequately respond to the Orders to Show Cause may result in the dismissal of the CFAA claim with prejudice and the dismissal of the remaining claims asserted in the Complaint without prejudice.

    IT IS SO ORDERED.

---

[4/]    Contrary to the jurisdictional allegations in L'Occitane's Complaint, and although some of the declaratory relief claims reference the United States Constitution and preemption under the Communications Decency Act, those declaratory relief claims do not appear to allege claims over which the Court possesses federal question jurisdiction.  See City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1006 (9th Cir. 2010) ("It is well settled that the Declaratory Judgment Act does not itself confer federal subject matter jurisdiction but merely provides an additional remedy in cases where jurisdiction is otherwise established."); see also State of Cal. ex rel. Dep't of Water Res. v. Orville-Wyandotte Irr. Dist., 409 F.2d 532, 535 (9th Cir. 1969) ("It is the character of the threatened action, not the defense, which determines federal question.").