JENNIFER L. KELLER (SBN 84412)
  jkeller@kelleranderle.com
CHASE A. SCOLNICK (SBN 227631)
  cscolnick@kelleranderle.com
JAY P. BARRON (SBN 245654)
  jbarron@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
(949) 476-8700 Telephone
(949) 476-0900 Facsimile

*Attorneys for Defendant,*
*Zimmerman Reed LLP*

CALEB MARKER (SBN 269721)
  caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080 Los
Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Defendants,*
*Zimmerman Reed LLP and Remaining Claimants*
*It Represents*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L'OCCITANE, INC., | Case No. 2:24-cv-01103-PA-RAO |
| Plaintiff, | *Assigned to the Honorable Percy Anderson* |
| v. | **ZIMMERMAN REED LLP'S AND REMAINING CLAIMANTS' MEMORANDUM IN RESPONSE TO THE COURT'S APRIL 12, 2024 ORDER TO SHOW CAUSE (DOC. NO. 53)** |
| Zimmerman Reed LLP; and 3,144 Of Its Purported Clients, | |
| Defendants. | |
| | Complaint Filed:  February 8, 2024 Courtroom:          9A |
| | Trial Date:         TBD |

Defendants Zimmerman Reed LLP ("Zimmerman Reed") and all Claimants with whom Zimmerman Reed has a current representation agreement submit this response to the Court's request for briefing on its order to show cause.[1] *See* ECF No. 53.

## **INTRODUCTION**

Because Plaintiff L'Occitane, Inc.'s Computer Fraud and Abuse Act ("CFAA") claim is fatally defective against all defendants, and there now exists no live case or controversy between the parties, the Court should dismiss this action in its entirety. On April 12, 2024, the Court granted Zimmerman Reed's motion to dismiss L'Occitane's CFAA claim against it. *See* ECF No. 53. The Court further found leave to amend that CFAA claim would be futile and dismissed it without leave to amend. *Id*. at 7.

Separately, on April 12, 2024, the Court denied Claimants' Motion to Compel Arbitration. *See* ECF No. 52. As a result, Claimants have withdrawn all demands for arbitration filed against L'Occitane.[2] *See* Declaration of Caleb Marker ("Marker Decl.") ¶ 2. Further, while a small subset of Claimants previously filed a state court petition to compel arbitration as a means of preserving that arbitration right, that petition—which had not been fully briefed and on which the state court made no ruling—also has now been voluntarily dismissed by those Claimants.[3] *Id*. ¶ 3. Therefore, the perceived threat

---

[1] The Court's dismissal of the CFAA claim against Zimmerman Reed (ECF No. 53) alleviated any issue of potential conflict, which had delayed or prevented Zimmerman Reed from representing Claimants in this action. Zimmerman Reed now represents in this action all Claimants with whom it has a current representation agreement. *See* Marker Decl. ¶ 4. While Zimmerman Reed does not submit this memorandum on behalf of those Claimants it no longer represents, the Court can and should dismiss those Claimants for the same reasons set forth below and in the Court's April 12 Order (ECF No. 53). *See Ghane v. California State Att'y Gen.*, 2016 WL 3683327, at *2 (C.D. Cal. July 9, 2016) (Anderson, J.) ("[F]ederal courts are obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction….[T]he court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.").

[2] Some Claimants had never filed a demand for arbitration. *See* ECF No. 21-2 at 3.

[3] In November 2023, a subset of Claimants filed demands for arbitration under L'Occitane's terms and conditions and served them on L'Occitane and the American Arbitration Association ("AAA"). On March 13, 2024, AAA informed those Claimants that it had not received payment for L'Occitane's portion of the arbitration filing fees and it "must decline to administer the individual demands filed" by them. On March 15, 2024,

of those arbitrations no longer exists. As the Court recognized, "that threat has evaporated." ECF No. 53 at 8. There is now no live case or controversy which could serve as a basis for L'Occitane's declaratory relief claims. Nor is there any claim over which this Court has original jurisdiction or should exercise supplemental jurisdiction. In short, there are no viable or justiciable claims remaining before this Court.

In its April 12 Order granting Zimmerman Reed's Motion to Dismiss, the Court ordered the parties to show cause in writing on three issues:

1. "Because the Court's reasoning on that [CFAA] claim [against Zimmerman Reed] appears to also apply to L'Occitane's CFAA claim against Claimants, the Court orders the parties to show cause in writing why the Court should not also dismiss the CFAA claim against Claimants."

2. "[I]n light of the Court's separate order in which it denied Claimants' Motion to Compel Arbitration, and to avoid the Court's unnecessary resolution of issues that may no longer present a live case or controversy, for which L'Occitane appears to lack standing, and would amount to an advisory opinion, the Court orders the parties to show cause why the claims for declaratory relief against both Zimmerman Reed and Claimants should not be dismissed without prejudice for lack of standing, the absence of a live case or controversy, because the declarations L'Occitane seeks would be impermissible advisory opinions, or why the Court should not otherwise exercise its discretion by declining to entertain the claims for declaratory relief."

3. "[T]he Court orders the parties to show cause in writing why, if the Court concludes that the CFAA claim should be dismissed against both Zimmerman Reed and Claimants, why the Court should not decline to exercise supplemental jurisdiction over the remaining claims for declaratory relief pursuant to 28 U.S.C. § 1367(c)(3)."

*See* ECF No. 53 at 8-9.

As to the first issue, the Court should dismiss without leave to amend the CFAA claim against Claimants because the Court's reasoning in dismissing the CFAA claim

---

Zimmerman Reed, on behalf of that subset of Claimants, filed a petition under California Code of Civil Procedure section 1287.97, which provides that a consumer may compel arbitration if the party who drafted the arbitration agreement (here, L'Occitane) fails to pay its share of the fees required to be paid before an arbitration can proceed. That case is captioned *Isabel Aguila, et al. v. L'Occitane, Inc.*, Case No. 24STCP00802 (Sup. Ct. Cal. 2024). However, that petition—which had been filed to preserve those Claimants' right to arbitrate—has now been voluntarily dismissed. Marker Decl. ¶ 3.

against Zimmerman Reed also applies to the CFAA claim against Claimants. *See* Section I, *infra*. Just as with its CFAA claim against Zimmerman Reed, L'Occitane's CFAA claim against the Claimants relies on supposed visits to L'Occitane's public website after a cease-and-desist, and a visit to a public website cannot be the basis of a CFAA claim.

As to the second issue, the Court should dismiss without prejudice the claims for declaratory relief against both Zimmerman Reed and Claimants for lack of standing, the absence of a live case or controversy, and because the declarations L'Occitane seeks would be impermissible advisory opinions. *See* Section II, *infra*. Even if those deficiencies could be overcome, the Court may decline to entertain those claims. *Id.*

As to the third issue, the Court should decline to exercise supplemental jurisdiction over the remaining claims for declaratory relief, especially because the only federal claim, the CFAA claim, should be dismissed as to all Defendants. *See* Section III, *infra*.

Zimmerman Reed and Claimants respectfully request that the Court dismiss all declaratory relief and CFAA claims asserted by L'Occitane, thereby resulting in the dismissal of this case in its entirety.[4]

## <u>ARGUMENT</u>

### I. THE COURT SHOULD DISMISS THE CFAA CLAIM AGAINST CLAIMANTS FOR THE SAME REASON IT DISMISSED THE CFAA CLAIM AGAINST ZIMMERMAN REED.

"Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition.'" *In re Koebel*, 2016 WL 354865, at *6 (C.D. Cal. Jan. 27, 2016) (Anderson, J.), quoting *Milgard Tempering,*

---

[4] L'Occitane voluntarily dismissed two individual Claimants as Defendants and, in those filings, made inaccurate assertions about Zimmerman Reed's representation of them. *See* ECF Nos. 54, 56. L'Occitane made similar inaccurate assertions in its prior supplemental brief concerning the petition to compel arbitration. ECF No. 50. Although it has no bearing on whether the Court should dismiss the remaining claims, Zimmerman Reed addresses and corrects those misstatements. Contrary to L'Occitane's claims, Zimmerman Reed had a written representation agreement with each Claimant that L'Occitane identified as supposedly not having one. *See* Marker Decl. ¶ 5.

*Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). This doctrine requires that a court's decision on any factual or legal issue should be "followed in all subsequent proceedings in the same case in the trial court." *Pit River Home and Agric. Coop. Ass'n v. United States,* 30 F.3d 1088, 1096–97 (9th Cir. 1994); *see also Kidd v. Mayorkas*, 645 F.Supp.3d 961, 965 (C.D. Cal. 2022) (The law of the case "doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"), *quoting Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382 (1983).

Here, the Court dismissed the CFAA claim without leave to amend against Zimmerman Reed.  In doing so, the Court analyzed and relied on the Ninth Circuit's decision in *hiQ Labs v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022).  *See* ECF No. 53 at 5-7.  The Court concluded that "the Ninth Circuit's analysis of the CFAA in *hiQ Labs* applies to L'Occitane's claim where a public website's operator selectively revokes authorization but imposes no technological barriers to an unwanted visitor." *Id*. at 6.  The Court's reasoning in dismissing the CFAA claim against Zimmerman Reed also applies to the CFAA claim against Claimants.

L'Occitane alleges the same factual basis for the CFAA claim against Claimants as it did against Zimmerman Reed, *i.e.*, that both Claimants and Zimmerman Reed visited L'Occitane's public website (or conspired to do so) after L'Occitane purported to revoke authorization for them to do so.  *See* ECF No. 1 ("Compl."), ¶¶ 132, 139-41. In dismissing the claim against Zimmerman Reed, the Court found no amendment could cure the deficiencies in L'Occitane's CFAA claim against Zimmerman Reed because the CFAA claim "is premised on its revoking permission for Zimmerman Reed *and its clients* to visit L'Occitane's public website." ECF No. 53 at 6 (emphasis added). But accessing a public website, as the Court held, does not create an actionable CFAA claim.  *Id.*

The law of the case doctrine and the *hiQLabs* ruling supports dismissal of the CFAA claim against Claimants.  L'Occitane is unable to overcome the application of that doctrine here because it has not and cannot allege different facts supporting a CFAA

4

claim against Claimants, cite any controlling authority overruling *hiQLabs*, or show that the Court's decision dismissing the CFAA claim was "clearly erroneous and would work a manifest injustice." *Pit River*, 30 F.3d at 1096–97.

## II. L'OCCITANE'S CLAIMS FOR DECLARATORY RELIEF AGAINST ZIMMERMAN REED AND CLAIMANTS SHOULD BE DISMISSED.

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Ninth Circuit has explained that "[t]wo issues are presented to the district court" when it assesses whether it may and should exercise jurisdiction over an action for declaratory judgment. *Nelson v. PFS Corp.*, 2021 WL 3468145, at *1 (C.D. Cal. May 10, 2021) (Anderson, J.), citing *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

"First, the court must inquire whether there is a case of actual controversy within its jurisdiction. Jurisdiction to award declaratory relief exists only in a case of actual controversy. We have held that this requirement is identical to Article III's constitutional case or controversy requirement." *Id.* (citing *American States*, 15 F.3d at 143).

"Second, if there is a case or controversy within its jurisdiction, the court must decide whether to exercise that jurisdiction." *Id.* (citing *American States*, 15 F.3d 143-44). In assessing whether to exercise its discretion to entertain a declaratory relief claim over which it possesses subject matter jurisdiction, district courts apply the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). *Id.* "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* (citing *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)). Here, there is neither a "live case or controversy" nor a claim that affords the Court with jurisdiction. Consequently, the Court should dismiss the entire action.

**A.** **There Is No Live "Case Or Controversy" Which Could Serve As The Basis For L'Occitane To Have Standing For Its Declaratory Relief Claims Application to this Case.**

When a party asserts a claim for a declaratory judgment, "federal courts must take care to ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007); *see also Coal. For a Healthy Cal. v. F.C.C.*, 87 F.3d 383, 386 (9th Cir. 1996) (noting that "federal courts have never been empowered to issue advisory opinions"). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." *Nelson*, 2021 WL 3468145, at *1 (quoting *Rhoades*, 504 F.3d at 1157).

"An actual case or controversy exists where 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*, *quoting Rhoades*, 504 F.3d at 1157. "[T]he dispute has to be 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Id.*, *quoting Rhoades*, 504 F.3d at 1157. Further, the "case or controversy" must exist not only at the time the claim was filed but must persist until the case is decided. *See, e.g., Burke v. Barnes*, 479 U.S. 361, 363, 107 S.Ct. 736 (1987) ("Article III of the Constitution requires that there be a live case or controversy *at the time that a federal court decides the case. . . .*" (emphasis added); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797-798 (9th Cir. 1999) ("If an action or a claim loses its character as a live controversy, then the action or claim becomes 'moot,' and we lack jurisdiction to resolve the underlying dispute."); *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1017 (9th Cir. 2013) (same).

Here, the Court should dismiss without prejudice the claims for declaratory relief against Zimmerman Reed and Claimants because there is no live case or controversy. Zimmerman Reed has withdrawn all demands for arbitration filed by Claimants against L'Occitane and dismissed a parallel state court petition to compel arbitration filed by a

subset of Claimants. *See* Marker Decl. ¶¶ 2-3. Without the underlying actions—none of which now exist—there is no "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" in this case. *Nelson*, 2021 WL 3468145, at *1. This Court therefore lacks subject matter jurisdiction as there is no live case or controversy. *Nelson*, 2021 WL 3468145, at *1 ("Jurisdiction to award declaratory relief exists only in a case of actual controversy. We have held that this requirement is identical to Article III's constitutional case or controversy requirement."); *see also id*. ("Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1).").[5]

Further, without a live case or controversy, any decision by this Court would be an unconstitutional advisory opinion. *Nelson*, 2021 WL 3468145, at *1 ("[F]ederal courts have never been empowered to issue advisory opinions."); *Coal. For a Healthy Cal.*, 87 F.3d at 386 (same); *see also Rhoades*, 504 F.3d at 1157. Given that the Court's orders on the motions to compel and dismiss has effectively ended the dispute and the controversy, the Court should dismiss the remaining claims against all Defendants.

L'Occitane may argue Claimants who only visited L'Occitane's website may revive their arbitration demands or file claims in court after this Court's dismissal. Alternatively, L'Occitane may assert those Claimants who made purchases could attempt to arbitrate their claims. However, none of these hypothetical possibilities support finding a case or controversy. The Court's "role is neither to issue advisory opinions nor to

---

[5] The Court should dismiss without prejudice the claims for declaratory relief against Zimmerman Reed for additional, independent reasons. First, as to the fourth and fifth claims, L'Occitane's prior briefing clarifies that such claims are not asserted against Zimmerman Reed at all. *See, e.g*., ECF No. 53 at 4. Second, as to the first, second, third, and sixth claims for declaratory relief, Zimmerman Reed is a law firm which asserted Claimants' claims against L'Occitane, but Zimmerman Reed itself made no claims and sought no relief against L'Occitane. *See* ECF No. 26 at 19-21; ECF No. 47 at 11-12. Thus, regardless of any "case or controversy" L'Occitane may assert still exists between L'Occitane and Claimants, it is an inescapable fact that there is no case or controversy, and there has never been one, between L'Occitane and Zimmerman Reed. Any such declaration as to Zimmerman Reed would be an impermissible advisory opinion.

declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (citing U.S. Const. art. III). Moreover, none of these hypothetical possibilities are ripe for adjudication by this Court. "For a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions." *Kelly v. Univ. Press of Mississippi*, 2016 WL 4445986, at *3 (C.D. Cal. Aug. 16, 2016) (Anderson, J.). As such, any attempt by L'Occitane to establish a live controversy would rest entirely on hypothetical speculation, which is insufficient to overcome the lack of a controversy here.

### B.   Even If There Were a Live Case or Controversy, The Court Can And Should Decline Jurisdiction Over the Claims for Declaratory Relief.

Even if there was a live case or controversy (there is not), the Court has discretion to determine "whether to exercise [its] jurisdiction to entertain such actions." *Regal Beloit Am., Inc. v. Power Right Indus., LLC*, 2014 WL 12603114, at *2 (C.D. Cal. Oct. 6, 2014) (Anderson, J.). Courts apply several factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173 (1942), when assessing whether to exercise its discretion to entertain a declaratory relief claim over which it otherwise has jurisdiction. *See Nelson*, 2021 WL 3468145, at *1. Here, the Court should exercise its discretion to not entertain L'Occitane's claims for declaratory relief to avoid needless determinations of state law issues such as the applicability and constitutionality of CIPA and discourage litigants from filing declaratory actions as a means of forum shopping. *Id*. This Court need not address L'Occitane's sweeping constitutionality defenses aimed at CIPA.

### III.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER L'OCCITANE'S REMAINING CLAIMS FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 1367(C)(3)

Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution." But, under § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." Here, the only substantive claim (the CFAA claim), should be dismissed entirely, leaving only L'Occitane's declaratory relief claims, for which there is no jurisdictional basis.

"It is well settled that the Declaratory Judgment Act does not itself confer federal subject matter jurisdiction but merely provides an additional remedy in cases where jurisdiction is otherwise established." *City of Colton v. Am. Promotional Events, Inc.- West.*, 614 F.3d 998, 1006 (9th Cir. 2010). To establish subject matter jurisdiction based on a federal question, "[i]t is the character of the threatened action, not the defense, which determines federal-question jurisdiction." *State of Cal. By & Through Dep't of Water Res. v. Oroville-Wyandotte Irr. Dist.*, 409 F.2d 532, 535 (9th Cir. 1969). "A declaratory judgment plaintiff may not assert a federal question in his complaint if, but for the declaratory judgment procedure, that question would arise only as a federal defense to a state law claim brought by the declaratory judgment defendant in state court." *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985).

L'Occitane's claims for declaratory relief do not allege claims over which the Court possesses federal question jurisdiction. *See* Doc. No 53 at 9 n. 4. L'Occitane's claims for declaratory relief can be grouped as follows: (1) claims for declaratory relief involving defenses under the U.S. Constitution to alleged CIPA violations (*i.e.*, CIPA violates the First, Fifth, and Fourteenth Amendments to the U.S. Constitution); (2) claims for declaratory relief involving defenses under state contract law to alleged contract claims (*i.e.*, failure to form a contract and failure comply with a condition precedent to arbitration); and (3) a claim for declaratory relief involving a defense under federal preemption law to alleged CIPA violations (*i.e.*, CIPA is preempted by the Communications Decency Act).

All of L'Occitane's claims for declaratory relief arise only as a defense to the CIPA and contract claims Claimants had made in their demands for arbitration, pre-dispute

notices, and parallel state law petition to compel arbitration—all of which are now voluntarily dismissed and withdrawn.  But for the federal declaratory judgment procedure, L'Occitane's claims for declaratory relief under the U.S. Constitution and the Communications Decency Act would arise "only as a federal defense" to a state law CIPA claim brought by Claimants and therefore they cannot be the basis for federal question jurisdiction in this Court.  *See Janakes*, 768 F.2d at 1093. Similarly, L'Occitane's claims for declaratory relief under state contract law do not support federal question or diversity jurisdiction. *See also Cincinnati Bengals, Inc. v. Manderino*, 2022 WL 17363914, at *5 (C.D. Cal. Sept. 7, 2022) (dismissing complaint where plaintiff's claim for a declaration that a state statute violated the Fourteenth Amendment of the U.S. Constitution was made only as a defense to the defendant's underlying state claim).

"[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction over the remaining state law claims." *Moda v. EIJ, Inc.*, 2023 WL 8896903, at *4 (C.D. Cal. June 23, 2023) (Anderson, J.); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (same). Because the Court has dismissed (or will dismiss) the only claim over which it has original jurisdiction (*i.e.*, the CFAA claim), the Court should decline to exercise supplemental jurisdiction over L'Occitane's remaining claims for declaratory relief under § 1367(c)(3). *See Bernard Robins v. City of Los Angeles, et al.*, 2023 WL 11016456, at *1 (C.D. Cal. Aug. 30, 2023) (Anderson, J.); *Smith v. Teamsters Loc. 2010*, 2019 WL 6647935, at *9 (C.D. Cal. Dec. 3, 2019) (Anderson, J.); *Westfield-Thornton v. Ramprate, Inc.*, 2014 WL 4105442, at *4 (C.D. Cal. Aug. 18, 2014) (Anderson, J).

Respectfully submitted,

KELLER/ANDERLE LLP

Dated: April 22, 2024          By:   /s/ Chase A. Scolnick

JENNIFER L. KELLER (SBN 84412)
jkeller@kelleranderle.com
CHASE A. SCOLNICK (SBN 227631)
cscolnick@kelleranderle.com
JAY P. BARRON (SBN 245654)
jbarron@kelleranderle.com

10

KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
(949) 476-8700 Telephone
(949) 476-0900 Facsimile

*Attorneys for Defendant Zimmerman Reed LLP*

Respectfully submitted,

ZIMMERMAN REED LLP

Dated: April 22, 2024                By:  */s/ Caleb Marker*

CALEB MARKER (SBN 269721)
caleb.marker@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

*Attorneys for Defendants Zimmerman Reed LLP and Its Remaining Claimants*

MEMORANDUM IN RESPONSE TO THE COURT'S APRIL 12, 2024
ORDER TO SHOW CAUSE