ALLAN E. ANDERSON (SBN 133672)
allan.anderson@afslaw.com
ADAM D. BOWSER (*pro hac vice*)
adam.bowser@afslaw.com
ANDREA M. GUMUSHIAN (SBN 342528)
andrea.gumushian@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Plaintiff
L'OCCITANE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L'OCCITANE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>Zimmerman Reed LLP and 3,144 Of Its Purported Clients,<br><br>    Defendants. | Case No. 2:24-cv-01103-PA-RAO<br><br>**PLAINTIFF'S RESPONSES TO ORDERS TO SHOW CAUSE**<br><br>Judge:    The Hon. Percy Anderson<br>Courtroom: 9A<br><br>Complaint Filed:  February 8, 2024 |

Pursuant to the Court's April 12, 2024 Order (ECF No. 53), Plaintiff L'Occitane, Inc. respectfully submits these Responses to Orders to Show Cause.

## I. L'Occitane Concedes that the Court's Reasoning as to the CFAA Claim Applies Equally to the Individual Defendants

The Court indicated that "[b]ecause the Court's reasoning on" the CFAA claim "appears to also apply to L'Occitane's CFAA claim against the Claimants," the Court directed the parties to show cause as to "why the Court should not also dismiss the CFAA claim against Claimants." ECF No. 53 at 8.[1] L'Occitane acknowledges that the Court's reasoning applies equally to the subset of Claimants who visited L'Occitane's Website after being expressly told not to, and agrees to the dismissal of the CFAA claim against those Claimants.

Nevertheless, for the reasons detailed below, L'Occitane still has standing to pursue its remaining claims against the defendants, including Zimmerman Reed, and the Court should continue to exercise supplemental jurisdiction over these remaining claims because they call for the resolution of the purely federal issues that L'Occitane's Complaint raises. To the extent any doubt exists about the foregoing, L'Occitane can easily cure any perceived jurisdictional deficiency through an Amended Complaint, which the Court already ruled it will allow. ECF No. 53 at 9 (ruling that "failure to timely or adequately respond may result in … the dismissal of the remaining claims asserted in the Complaint *without* prejudice.") (emphasis added).

---

[1] For the avoidance of doubt, L'Occitane was only pursuing CFAA claims against any of the Claimants whose threatened CIPA claim was found to be predicated on a *post-October 6, 2023* visit to the Website. By that point, after this subset of Claimants was expressly told to stay off the Website, the only possible inference in L'Occitane's view was that these individuals came onto the Website strictly to generate fraudulent claims. Indeed, these individuals would had to have disregarded a clear and conspicuous pop-up consent window expressly concerning L'Occitane's use of cookies (as everyone in California does), Compl. ¶ 16, only later to complain about these very technologies that don't even track communications on the Website they were told to stay off of in any event. *Id.* ¶¶ 17-21.

## II. The Court Should Retain Jurisdiction Because Actual Cases and Controversies Still Exist between L'Occitane and the Defendants[2]

There remains a live case or controversy between the parties because, simply put, the individual defendants are still pursuing their purported CIPA *claims* against L'Occitane, and Zimmerman Reed is independently demanding its attorneys' fees for pursuing these unconstitutional claims it should be preempted from bringing in the first instance.[3] In fact, the defendants persist in their collective effort to compel L'Occitane *to arbitrate* these same claims – despite the Court's unequivocal and claim-preclusive order finding that no "agreement to arbitrate exists between L'Occitane and Claimants." ECF No. 52 at 7. That is, the *same* defendants filed a

---

[2] L'Occitane prefaces this section with the qualification that, without attempting to meet and confer or otherwise giving any forewarning in the ten days the Court provided the parties to submit this supplemental briefing, Zimmerman Reed notified L'Occitane's counsel at approximately 5:00 p.m. EDT today that it filed a request to dismiss the Petition discussed below and separately withdrew the now mooted arbitration demands – all ***without prejudice***. In short, L'Occitane has no reason to believe that these actions taken at the 11th hour were meant to *genuinely* resolve this dispute. If that were the case, Zimmerman Reed would have requested dismissal of its collateral attacks on the Court's Order ***with prejudice***. Thus, while L'Occitane is still evaluating the impact of these developments from this evening, it is difficult to conclude that these "withdrawals" are anything other than calculated gamesmanship to give the *appearance* of there being no live case or controversy – simply to enable the defendants to refile their claims at their leisure if the Court declines to retain jurisdiction over this dispute. Ultimately, if the defendants want to convince L'Occitane and the Court that there is not a live case or controversy, they can easily stipulate to the dismissal of their claims and their pursuit of arbitration **with prejudice**.

[3] The Petition was filed on March 14, 2024 – *after* Zimmerman Reed moved to compel arbitration in this proceeding on March 4, 2024 – forcing L'Occitane to respond to the Petition on April 15, 2024, after the Court had already ruled there is no agreement to arbitrate between the parties. These duplicative claims were ostensibly filed on behalf of the Claimants who comprise the first two batches of mass arbitration filings detailed in Paragraph 33 of the Complaint. The Petition is based on California state procedural provisions that allow a claimant to move for sanctions – provided there is an actual agreement to arbitrate – whenever the filing fees have not been paid within 30 days. *See*, *e.g.*, Petition, ¶¶ 26-27. Those provisions are inapplicable because this Court already conclusively determined there was no agreement between the parties to arbitrate.

petition to compel arbitration in California state court (the "Petition") to "enforce" the *same* (non-existent) "agreement" in connection with the *same* setup claims. *See* Gumushian Declaration, Exhibit A.[4] Accordingly, given the defendants' improper collateral attack on the Court's binding order, an actual case or controversy still exists between the parties. Article III standing requirements are therefore still easily established, as further detailed below.

As an initial matter, L'Occitane clarifies that while the specter of mass arbitration *should* have "evaporated," that does not mean that the threatened mass arbitration, and all of its associated and unnecessary costs, was the exclusive injury L'Occitane was facing. And even with today's developments, the most that can be said is that the defendants are declining to pursue *arbitration* of their claims – *without prejudice* to renewing their collateral attack on the Court's Order. That is, there is no indication that the defendants are giving up on their baseless *claims* that merely visiting the Website (if at all) "violates applicable laws, including but not limited to the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 *et seq.*" Compl. Ex. 2 at 1. To put a finer point on it, the *forum* in which Zimmerman Reed and its putative clients were originally threatening to pursue the *claims* was AAA arbitration, which as the Court recognized would have resulted in "well over $1 million in arbitration fees just **to initiate** the 3,144 arbitrations Zimmerman Reed seeks to pursue." ECF No. 52 at 3 (emphasis added).

The Court's Order conclusively establishes that the parties do not have any agreement to arbitrate the individual defendants' claims. *See Pearson v. Clackamas Cnty.*, No. 3:12-CV-00720-BR, 2012 WL 13239943, at *5 (D. Or. Nov. 14, 2012) ("orders denying motions to compel arbitration are final decisions for purposes of res judicata or claim preclusion"); *see also Towers, Perrin, Forster & Crosby, Inc.*

---

[4] Zimmerman Reed failed to inform the California state court of this federal proceeding even though plaintiffs are required to disclose "[i]f there are any known related cases" on the Civil Case Cover Sheet. Gumushian Decl., Ex. A at 3.

*v. Brown*, 732 F.2d 345, 350 (3d Cir. 1984) ("an order denying arbitration is final for purposes of res judicata"). But even in the face of the Court's Order denying the Motion to Compel Arbitration, the defendants are not giving up on their misguided CIPA claims. By analogy, if a defendant lost a motion to transfer venue,[5] no one would argue that the denial of the motion deprived the Court of Article III jurisdiction – as the underlying claim still persists. And here too, while the Court conclusively ruled that the AAA was not the correct "venue" – the Order did not *extinguish* the underlying *claim* or controversy between the parties.

And while this alone should suffice to establish that there remains "a live case or controversy at the time that a federal court decides the case" – *Burke v. Barnes*, 479 U.S. 361, 363 (1987) – the defendants' meritless collateral attack on the Court's Order through the Petition, which was only requested to be dismissed without prejudice today, indicates there is still likely a live controversy *as originally pled*.[6] Indeed, the Court's request for briefing on whether L'Occitane still has standing was premised on what *should have been* a reasonable premise that "[n]ow that the Court has denied Claimants' Motion to Compel Arbitration, that threat [of mass arbitration] has evaporated." ECF No. 53 at 8. Of course, given that the Court was unaware of the Petition, and the defendants are unwilling to dismiss it with prejudice, that factual premise is no longer accurate.[7] At a

---

[5] Of course, AAA would have been a *very expensive* venue, which is precisely why Zimmerman Reed was pursuing this strategy – as leverage to extort an *in terrorem* settlement. *Pay us now, or pay AAA millions in filing fees next month, regardless of how meritless our claims are.* To the defendants, the Court's Order is merely a speed bump because it may have slowed, but did not stop, the individual defendants from pursuing their underlying claims under a law that should be ruled as facially unconstitutional based on the Ninth Circuit's recent holding in *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023).

[6] Based on the Court's final, claim-preclusive Order denying the defendants' motion to compel arbitration that conclusively establishes L'Occitane has no agreement to arbitrate with the individual defendants, the Petition is entirely meritless solely on *res judicata* grounds. But this *legal* reality does not mean that the Petition is not *factually* causing L'Occitane immediate and ongoing injury.

[7] Independent of injury, courts retain jurisdiction to enforce their orders. *See,*

minimum, L'Occitane is continuing to expend vast employee time and resources and incur unnecessary legal expenses, among other concrete injuries, in addressing defendants' second bite at the proverbial apple.

Ultimately, the same threatened "injury [that] supported L'Occitane's standing to pursue its declaratory relief claims [still] exists." ECF No. 58 at 8. The threat of mass arbitration that was a *primary*, but certainly not exclusive, basis for L'Occitane's Complaint still remains – regardless of how meritless that threat is now. In light of the defendants' refusal to dismiss their claims *or* their Petition *with prejudice*, the controversy before the Court still involves "[a] declaration on rights as they stand [now] …., not on rights which may arise in the future … ." ECF No. 53 at 7 (citing *In re Summers*, 325 U.S. 561, 566-67 (1945)). And even if *that* threat of mass arbitration is conclusively resolved – which it should be – that still does not mean the defendants' underlying threatened claims have disappeared once and for all. There is thus nothing "advisory" about the declaratory relief L'Occitane seeks, as the threat of the defendants' collective enforcement of an unconstitutional law can only be viewed as both real and imminent absent a dismissal of their Petition and their underlying claims with prejudice. L'Occitane therefore clearly still has Article III standing to pursue its remaining claims against the defendants under the circumstances currently before the Court.

**III.   The Court Can and Should Continue to Exercise Jurisdiction Over the Remaining Claims, All of Which Call Upon the Court to Resolve Exclusively Federal Issues**

It is well-settled that the Court's subject matter jurisdiction is measured at the

---

*e.g.*, *Grondal v. Mill Bay Members Ass'n, Inc*., No. 2:09-CV-18-RMP, 2020 WL 4590527, at *2 (E.D. Wash. July 28, 2020) ("the Court retains jurisdiction to enforce its Order"). Given today's developments, L'Occitane respectfully submits that the Court should, at a very minimum, retain jurisdiction over this dispute to ensure that Zimmerman Reed does not engage in the legal equivalent of playing possum, just to collaterally attack the Court's Order at a later date.

time the Complaint was filed, and the Court is within its discretion to continue exercising jurisdiction over purely state law matters even after all the federal claims have been dismissed. *See Schneider v. TRW, Inc.* 938 F.2d 986, 994 (9th Cir. 1991) (affirming district court's decision to retain jurisdiction over remaining state law claims after all federal claims dismissed); *see also Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir. 1983) ("district court "was right in not imposing unnecessarily on a state court or on [the parties] a repetition of pleadings[.]")).

As the Supreme Court held in a directly analogous case where a state penal law was challenged on federal Constitutional grounds, any deference to state courts based on comity concerns is immaterial "in the absence of a pending state proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). Indeed, relevant here, the Court reasoned that

> When no state criminal proceeding is pending **at the time the federal complaint is filed**, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, … **a refusal on the part of the federal courts to intervene** when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding. When no state proceeding is pending and thus considerations of equity, comity, and federalism have little vitality, the **propriety of granting federal declaratory relief** may properly be considered independently of a request for injunctive relief.

*Id.* at 462-63 (further holding that when no state prosecution is pending, "and the only question is whether declaratory relief is appropriate(,) . . . the congressional scheme [] **makes the federal courts the primary guardians of constitutional rights**.") (citation omitted, emphasis added).

The same considerations apply here. There was no pending state court proceeding in which L'Occitane was disputing the defendants' claims when it filed

its Complaint, and the arbitration proceedings should be permanently foreclosed as well. Thus, this Court is the *only* tribunal where L'Occitane's challenge to CIPA is pending. In short, the Court retaining jurisdiction will not raise any comity concerns in the absence of any pending state court proceeding addressing L'Occitane's claims – and thus the Supreme Court's *Steffel* decision militates in favor of the Court retaining jurisdiction to fully dispose of L'Occitane's claims for declaratory relief.

And as "the primary guardian of constitutional rights," *id.* at 463, the Court should not be reluctant to squarely address whether a state law violates the US Constitution. Indeed, as detailed in L'Occitane's Complaint, the Court is best positioned to apply binding *Ninth Circuit* precedent to a California law that is nearly indistinguishable from the Oregon statute the Court of Appeals struck down as facially unconstitutional last year. Compl. ¶¶ 64-70. To do so, the Court need not wade into thorny state law issues best left to California state judges. On the contrary, the Court would be resolving L'Occitane's claims under the United States Constitution, the federal Communications Decency Act, 47 U.S.C. § 230, and federal case law interpreting the same. The deference given to state courts to interpret *their state* laws[8] is entirely inapplicable in these circumstances.

Nor do the doctrines of judicial economy, convenience, and fairness support dismissing the remaining federal law claims so that they can be brought in a state court. Federal courts have consistently upheld decisions to retain pendent claims on the basis of judicial economy, in that *returning* the case to state court would be a waste of judicial resources.[9] *See, e.g., Mackey v. Pioneer Nat'l Bank,* 867 F.2d 520,

---

[8] In fact, even the state law at issue **incorporates federal law**. That is, both Cal. Penal Code Sections 631 and 632.7 carve out the services provided by a "public utility, or telephone company," which is defined in Section 234 of the Public Utilities Code, which in turn expressly references "facilities that are licensed by the Federal Communications Commission." Cal. Pub. Util. Code § 234(b)(2).

[9] In the instant case, Plaintiff originally filed suit in federal court, bringing federal law claims; therefore, there is no need to "return" any claims to state court.

523 (9th Cir. 1989) ("retention of jurisdiction well served the purposes of judicial economy and efficiency" after case had been in federal court only four months earlier); *see also In re Nucorp Energy Sec. Litigation,* 772 F.2d 1486, 1491 (9th Cir.1985) (district court "was right in not imposing unnecessarily on a state court or on [the defendant] a repetition of pleadings, motions, discovery and other pre-trial proceedings") (citing *Aydin Corp.,* 718 F.2d at 904). Of course here, there is no state court to which the Court can return the federal issues L'Occitane raises.

Judicial economy, procedural convenience, and fairness all weigh in favor of the Court retaining jurisdiction. The docket in the present case already has 56 entries and counting, including several Orders; extensive time and energy have been spent briefing and presenting the Court with the parties' claims and arguments, and much effort by the parties to resolve these issues would be wasted. In *Schneider*, the Ninth Circuit explained, "it is the district judge who is in the best position to determine whether enough resources have been expended to make dismissal a waste at any given point." 938 F.2d 986, 994 (9th Cir. 1991). That court discussed how "[a]s the Supreme Court has explained, 'the doctrine of pendent jurisdiction ... is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.'" *Id.* at 993-94 (quoting *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 619, 98 L.Ed.2d at 730).

Even absent an amendment to L'Occitane's Complaint, the Court can and should retain jurisdiction over L'Occitane's remaining claims because in doing so, the Court is being called upon to resolve exclusively <u>federal</u> legal issues raised by L'Occitane. Such a situation does not raise comity concerns, and as the Supreme

---

Further, this Court has acquired familiarity with the parties and their claims, such that forcing Plaintiff to refile or sending the case to a new forum for initiation of new proceedings would be inefficient and a waste of judicial resources.

Court counseled in *Steffel*, it is entirely appropriate – and warranted – for the Court to issue declaratory relief in these circumstances.

### IV. L'Occitane Should Be Permitted to Amend Its Complaint as a Matter of Right, and Leave to Amend the Complaint Should Be Liberally Permitted in Any Event

As noted at the outset, the Court has already effectively ruled that it will provide L'Occitane with the ability to amend its Complaint, as needed, to address any perceived jurisdictional deficiencies in the wake of the dismissal of the CFAA claim.  ECF No. 53 at 9 (stating that the Court *may* dismiss the "remaining claims asserted in the Complaint **without prejudice**.") (emphasis added).  For the avoidance of doubt, however, L'Occitane expressly requests leave to amend its Complaint, if necessary.

In fact, L'Occitane should have the ability to do so as a matter of right under Rule 15, which provides that a plaintiff is allowed to amend its pleading once as a matter of course 21 days after serving it or after 21 days after the service of a responsive pleading.  *See* Fed. R. Civ. P. 15(a)(1).[10]  While that is still the situation here for the individual defendants, in all other cases the Court should freely grant leave to amend when justice so requires. *Id.* 15(a)(2); *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal"); *Patterson v. City of Vacaville*, 2019 WL 2089996, at *1 (E.D. Cal. May 13, 2019); *Ross v. Pioneer Life Ins. Co.*, 545 F. Supp. 2d 1061, 1064 (C.D. Cal. 2008) ("Leave to amend is liberally allowed."); *Gonzalez v. United States*, 2017 WL 10239003, at *1 (E.D. Cal. Sept. 18, 2017).

---

[10]   L'Occitane began mailing waivers of service to the 2,081 individual defendants for whom Plaintiff has their contact information on April 5th, 2024, concluding the process by April 8th, 2024. While some individual defendants have waived service by signing the DocuSign waiver sent to them via email, others have not yet responded. L'Occitane has so far received a signed waiver of service from less than ten percent of the defendants contacted, but this is an ongoing process.

This rule is designed to ensure that cases are determined based on their merits, and it allows plaintiffs to adjust their claims to the facts and circumstances of the case. Indeed, even outside amendments as of right, "[t]he decision to grant or deny leave to amend is within the discretion of the trial court, but '[o]rdinarily, leave to amend should be freely given in the absence of prejudice to the opposing party.'" *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir.1981)); *see also Wyshak v. City National Bank*, 607 F.2d 824, 826 (9th Cir.1979).

Here, L'Occitane seeks, in good faith, to amend its complaint, as necessary, to conform its claims and allegations to the developments that have occurred since L'Occitane filed its Complaint nearly three months ago. *See*, *e.g.*, ECF Nos. 50-1, 55-56 (detailing numerous instances in which individual defendants and/or their *actual* attorneys unequivocally state Zimmerman Reed was never authorized to file underlying arbitration demands and never (legitimately) represented these individuals). Doing so will neither prejudice the defendants, produce an undue delay in litigation, nor is it futile. Rather, based on the present circumstances of the case, amending the Complaint will be beneficial to all parties and this Court. Alternatively, at this juncture, Rule 15 provides L'Occitane the ability to amend its Complaint as a matter of right. The Court's Order implicitly recognizes this, ECF No. 53 at 9, and L'Occitane expressly requests leave to amend its Complaint if the Court deems that necessary.

Dated:  April 22, 2024                    **ARENTFOX SCHIFF LLP**

By:*/s/Andrea M. Gumushian*
    Allan E. Anderson
    Adam D. Bowser
    Andrea M. Gumushian
Attorneys for Plaintiff
L'OCCITANE, INC.